# EXHIBIT J

**THE WHITE HOUSE**

WASHINGTON

June 18, 2019

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
United States House of Representatives
Washington, DC 20515

Dear Chairman Nadler:

I write concerning the subpoena issued by the Committee on the Judiciary (the "Committee") to Hope Hicks on May 21, 2019. The subpoena directs Ms. Hicks to testify before the Committee on Wednesday, June 19, 2019. As you are aware, Ms. Hicks served as a senior adviser to the President in the White House, holding the titles of Assistant to the President and Director of Strategic Communications, as well as Assistant to the President and White House Communications Director. The subpoena appears to seek testimony from Ms. Hicks concerning her service in the White House. As explained below, Ms. Hicks is absolutely immune from being compelled to testify before Congress with respect to matters occurring during her service as a senior adviser to the President.

The Department of Justice ("Department") has advised me that, with respect to the subpoena issued by the Committee on May 21, 2019, Ms. Hicks is absolutely immune from compelled congressional testimony with respect to matters occurring during her service as a senior adviser to the President. As you know, "[t]he Department has long taken the position—across administrations of both political parties—that 'the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional Committee.'" Letter from Pat A. Cipollone, Counsel to the President, to Rep. Jerrold Nadler (May 20, 2019) (quoting *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 191 (2007)); *see also, e.g., Immunity of the Counsel to the President from Compelled Congressional Testimony*, 20 Op. O.L.C. 308, 308 (1996). That immunity arises from the President's position as head of the Executive Branch and from Ms. Hicks's former position as a senior adviser to the President. "Subjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters relating to the performance of his constitutionally assigned executive functions." *Assertion of Executive Privilege with Respect to Clemency Decisions*, 23 Op. O.L.C. 1, 5 (1999).

As the Department has recognized, "[w]hile a senior presidential adviser, like other executive officials, could rely on executive privilege to decline to answer specific questions at a hearing, the privilege is insufficient to ameliorate several threats that compelled testimony poses to the independence and candor of executive councils." Memorandum for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, *Re: Testimonial Immunity Before Congress of the Former Counsel to the President*, 43

Op. O.L.C. __, *6 (May 20, 2019). "[C]ompelled congressional testimony 'create[s] an inherent and substantial risk of inadvertent or coerced disclosure of confidential information,' despite the availability of claims of executive privilege with respect to the specific questions asked during such testimony." *Id.* (quoting *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. __, *4 (July 15, 2014)). In addition, the threat of compelled interrogation about confidential communications with the President or his senior staff "could chill presidential advisers from providing unpopular advice or from fully examining an issue with the President or others." *Id.* Finally, given the frequency with which testimony of a senior presidential adviser would fall within the scope of executive privilege, compelling such an adviser's appearance is unlikely to promote any valid legislative interests. *Id.* at *6-7.

Because of this constitutional immunity, and in order to protect the prerogatives of the Office of President, the President has directed Ms. Hicks not to answer questions before the Committee relating to the time of her service as a senior adviser to the President. The long-standing principle of immunity for senior advisers to the President is firmly rooted in the Constitution's separation of powers and protects the core functions of the Presidency, and we are adhering to this well-established precedent in order to ensure that future Presidents can effectively execute the responsibilities of the Office of President. It is our understanding that Ms. Hicks's limited testimony before the House Permanent Select Committee on Intelligence and the Senate Select Committee on Intelligence was not inconsistent with this principle of immunity.

We recognize the Committee has also expressed an interest in questioning Ms. Hicks about her time working for the President-elect during the presidential transition. Much of Ms. Hicks's work during this period involved discussions with the President-elect and his staff relating to the decisions the President-elect would be making once he assumed office. Accordingly, her responses to specific questions about this period would likely implicate executive branch confidentiality interests concerning that decisionmaking process. In order to preserve the President's ability to assert executive privilege over such information, a member of my office will attend Ms. Hicks's testimony on June 19.

Finally, I note that the Committee and the Department are engaged in an ongoing accommodation process, and that accommodation process may resolve the Committee's requests for information. Please do not hesitate to contact me directly if you have any questions or would like to discuss this matter further.

Sincerely,

Pat A. Cipollone
*Counsel to the President*

cc: The Honorable Doug Collins, Ranking Member