# EXHIBIT K



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General        *Washington, D.C. 20530*

May 1, 2019

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C. 20515

Dear Chairman Nadler:

On April 18, 2019, the Attorney General took the extraordinary step of publicly disclosing the report of Special Counsel Robert S. Mueller, III, with as few redactions as possible. Under the regulations that govern the Special Counsel, his report was a "confidential," internal Department of Justice (Department) document, which contained the kind of prosecutorial deliberations that the Department almost never releases publicly. 28 C.F.R. § 600.8(c); 64 Fed. Reg. 37,038, 37,041 (July 9, 1999). Nonetheless, in response to requests from you and other Members, and in the interest of transparency, the Attorney General disclosed the report and volunteered to appear to testify before the Committee. In addition, the Attorney General offered you and other congressional leaders the chance to review the report with redactions only for grand-jury information (because disclosure of that information is prohibited by law). That would permit you to review 98.5% of the report, including 99.9% of Volume II, which discusses the investigation of the President's actions.

Regrettably, before even reviewing the less-redacted version or awaiting the Attorney General's testimony, you served a subpoena demanding (i) the unredacted report, (ii) every document cited therein, and (iii) "all documents obtained and investigative materials created" by the Special Counsel's office over nearly two years. In other words, the Committee has demanded all of the Special Counsel's investigative files, which consist of millions of pages of classified and unclassified documents, bearing upon more than two dozen criminal cases and investigations, many of which are ongoing. You served such a subpoena knowing that the Department could not lawfully provide the unredacted report, that the Committee lacks any legitimate legislative purpose for seeking the complete investigative files, and that processing your requests would impose a significant burden on the Department.

The Department has always been willing to follow the constitutionally mandated accommodation process to address legitimate congressional requests for information. In this case, both the Attorney General's decision to release the report with minimal

1

redactions and his willingness to testify were already extraordinary accommodations reflecting his respect for meeting the legitimate information needs of the Committee and its Members. But this subpoena is not legitimate oversight. The requests in the subpoena are overbroad and extraordinarily burdensome. More importantly, these requests would pose a fundamental threat to the confidentiality of law enforcement files and the Department's commitment to keep law enforcement investigations free of political interference.

For reasons integral to our law enforcement responsibilities, the Department's practice is to reveal information about our criminal investigations only when we decide to prosecute, and then generally only in court, in our indictments and subsequent filings. When we decline to prosecute, we abide by fundamental principles of privacy and due process and refrain from publicly assessing the information that was assembled regarding individuals who were investigated but not prosecuted. Attorney General Barr's decision to release the confidential report reflected an extraordinary accommodation of the congressional and public interest in the results of the Special Counsel's investigation and was justified because it was critical for the American people to know the Special Counsel's conclusion that the Trump campaign did not conspire or coordinate with Russia in its attempts to interfere with the 2016 presidential election.

We are disappointed, however, that the Committee has responded to this extraordinary accommodation by reflexively issuing a subpoena that threatens to swallow the extremely important principle that the Department must preserve the confidentiality of its investigations. It is one thing for the Attorney General to disclose a written report of prosecutorial decisions, but quite another thing to open up the entirety of the investigative file to congressional review. Allowing your Committee to use Justice Department investigative files to re-investigate the same matters that the Department has investigated and to second-guess decisions that have been made by the Department would not only set a dangerous precedent, but would also have immediate negative consequences.

Over the past year, you have repeatedly expressed concern that the Special Counsel's investigation would not remain free of outside interference. You now know, as reported in the Attorney General's March 22, 2019 letter, that the Special Counsel completed his investigation, on his own terms and on his own schedule, and that there were no instances where the Attorney General or his predecessors overruled the Special Counsel's judgment. That does not, however, mean that we now may tolerate the specter of congressional interference with the autonomy of the Department's law enforcement functions. *See, e.g., Assertion of Executive Privilege over Documents Generated in Response to Congressional Investigation into Operation Fast and Furious*, 36 Op. O.L.C. __, at *4-5 (June 19, 2012) (opinion of Attorney General Holder) (citing the need "to ensure that critical ongoing law enforcement actions are not compromised and that law enforcement decisionmaking is not tainted by even the appearance of political influence").

The Department must ensure that it may continue to conduct law enforcement investigations free of outside interference, particularly in high-profile cases that receive intense public scrutiny. To that end, the Department has long resisted congressional attempts to rummage through its investigative files. As Attorney General Michael Mukasey recognized in advising the President to assert executive privilege over FBI

investigative reports bearing upon the Valerie Plame investigation, the Department has a "concern about the prospect of committees of Congress obtaining confidential records from Justice Department criminal investigative files for the purpose of addressing highly politicized issues in public committee hearings." *Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 10-11 (2008).

Attorney General Robert Jackson similarly declined to provide Congress with the FBI's investigative files related to counterespionage activities. Writing "with the approval of and at the direction of [President Roosevelt]," Jackson explained that disclosing such information would "be of serious prejudice to the future usefulness of the Federal Bureau of Investigation," which often relies upon information that is "given in confidence and can only be obtained upon pledge not to disclose its sources." *Position of the Executive Department Regarding Investigative Reports*, 40 Op. Att'y Gen. 45, 46 (1941). Furthermore, such disclosure "might also be the grossest kind of injustice to innocent individuals," since "[i]nvestigative reports include leads and suspicions, and sometimes even the statements of malicious or misinformed people." *Id.* at 47. Noting that a "long line of distinguished predecessors" had "uniformly taken the same view," Jackson concluded that "the public interest does not permit general access to Federal Bureau of Investigation reports for information by the many congressional committees who from time to time ask it." *Id.*

Consistent with these precedents, "[t]he Department's longstanding policy is to decline to provide Congressional committees with access to open law enforcement files." Letter for John Linder, Chairman, Subcommittee on Rules and Organization of the House, from Robert Raben, Assistant Attorney General, Office of Legislative Affairs at 3 (Jan. 27, 2000). "[P]roviding a Congressional committee with confidential information about active criminal investigations would place the Congress in a position to exert pressure or attempt to influence the prosecution of criminal cases." *Id.* at 4. In addition, "the disclosure of documents from our open files could also provide a 'road map' of the Department's ongoing investigations. . . . The investigation would be seriously prejudiced by the revelation of the direction of the investigation, information about the evidence that the prosecutors have obtained, and assessments of the strengths and weaknesses of various aspects of the investigation." *Id.*

Even with respect to closed law enforcement matters, the Department must protect the numerous confidentiality interests implicated by law enforcement information—starting with our "broad confidentiality interest in materials that reflect [the Department's] internal deliberative process." *Id.* at 5. "We have long been concerned about the chilling effect that would ripple throughout government if prosecutors, policy advisors at all levels and line attorneys believe that their honest opinion . . . may be the topic of debate in Congressional hearings or floor debates." *Id.* In addition, "[t]he Department takes very seriously its responsibility to respect the privacy interests of individuals about whom information is developed during the law enforcement process." *Id.* We also have substantial confidentiality interests regarding sensitive law enforcement and intelligence information, such as information regarding confidential sources, methods, and techniques. In this case, the Special Counsel's investigation received the White House's cooperation in

making witnesses and documents available. Similar access by the Department could be impeded in future investigations if the White House were given reason to believe that Congress would receive each and every document shared with the Department.

Against this backdrop of the Department's compelling need to protect the autonomy and effectiveness of its investigations, as well as the extraordinary steps the Attorney General has already taken to accommodate the Committee's needs, the Committee has not articulated any legitimate legislative purpose for its request for all of the Special Counsel's investigative files. The Committee has no legitimate role in demanding law enforcement materials with the aim of simply duplicating a criminal inquiry—which is, of course, a function that the Constitution entrusts exclusively to the Executive Branch. If the Department were to provide law enforcement materials every time a high-profile and politically charged investigation was underway, we would irredeemably undermine the integrity and independence of law enforcement investigations. This is especially true here where the Committee has demanded every single document bearing upon over two dozen separate criminal cases and investigations, and where the only point of the demand seems to be to generate public disclosures that the Special Counsel's extensive report did not already produce and to second-guess prosecution and declination decisions made by the Department. This is not a legitimate use of congressional investigative authority.

For these reasons, the Department is unable to provide the Committee with the Special Counsel's investigative files. In reaching this conclusion, we do not close the door on engaging with the Committee about potential further accommodations in response to a properly focused and narrowed inquiry that is supported by a legitimate legislative purpose. If and when the Committee has completed its review of the Special Counsel's report and has identified particularized and legitimate needs for information that are not satisfied by the report itself, we will be prepared to engage further with the Committee and to respond to your specific requests for information. Our response, of course, must remain consistent with long-standing Department obligations, including the need to protect the autonomy of criminal investigations, the obligation to protect grand-jury information, and the legitimate confidentiality interests of the Executive Branch.

We are also unable to honor your specific request for the completely unredacted Special Counsel's report because disclosing grand-jury information in response to congressional oversight requests is prohibited by law. Rule 6(e) of the Federal Rules of Criminal Procedure provides that matters occurring before a grand jury must be kept secret, except in certain specifically enumerated circumstances. *See McKeever v. Barr*, No. 17-5149, 2019 WL 1495027, at *2 (D.C. Cir. Apr. 5, 2019). Rule 6(e) contains no exception that would permit the Department to provide grand-jury information to the Committee in connection with its oversight role. Therefore, the Department may not provide the grand-jury information that the subpoena requests. The Department has, however, provided you and the Ranking Member (as well as other members of leadership in the House and Senate) with access to a version of the report that redacts only the grand-jury information that cannot be disclosed under Rule 6(e). As noted above, this minimally redacted version would permit review of 98.5% of the report, including 99.9% of Volume II, which discusses the investigation of the President's actions.

Please do not hesitate to contact this office if we may be of further assistance.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:  The Honorable Doug Collins
     Ranking Member

5