# EXHIBIT N

ADAM B. SCHIFF, CALIFORNIA
CHAIRMAN

TIMOTHY BERGREEN, STAFF DIRECTOR
(202) 225-7690
www.intelligence.house.gov

ONE HUNDRED SIXTEENTH CONGRESS

DEVIN NUNES, CALIFORNIA
RANKING MEMBER

ALLEN SOUZA, MINORITY STAFF DIRECTOR

UNCLASSIFIED



# Permanent Select Committee on Intelligence
## U.S. House of Representatives

May 8, 2019

The Honorable William P. Barr
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

After repeated, bipartisan overtures and multiple, unreciprocated efforts by the House Permanent Select Committee on Intelligence ("Committee") to reach a reasonable accommodation on its requests to the Department of Justice for documents and materials related to the Special Counsel's investigation, including foreign intelligence and counterintelligence information, the Committee has no choice but to serve the attached subpoena for those materials.

On March 27, 2019, Ranking Member Devin Nunes and I wrote on a bipartisan basis to request that all materials, regardless of form and classification, obtained or produced by the Special Counsel's Office during its investigation, be produced to the Committee starting on April 2. The Committee received no response from you or the Department.

On April 25, after four weeks without any response, Mr. Nunes and I again wrote on a bipartisan basis to reiterate the Committee's request. We affirmed that the Committee seeks the Department's cooperation in good faith, but underscored that absent the Department's meaningful compliance with the Committee's request by May 2, the Committee would have no choice but to resort to compulsory process. Our letter made clear that, for the Committee to discharge its unique constitutional and statutory responsibilities, the Committee requires full visibility into the Special Counsel's Office's unredacted report, findings, and underlying evidence and information. In particular, the Committee has an obligation to conduct necessary oversight to examine the foreign intelligence and counterintelligence information gathered by the Special Counsel's Office, assess the counterintelligence and national security implications, and consider whether legislation or other appropriate remedies are required in response.

Representatives from the Department's Office of Legislative Affairs ("OLA") finally agreed to meet with Committee staff on April 29 to discuss, for the first and only time and on a bipartisan basis, the Committee's outstanding request. Committee staff outlined in detail the

1

Committee's request for documents and testimony and underscored the expectation that the Department would begin to meaningfully comply with the Committee's request by the deadline set out in our April 25 letter. On Monday, May 1, 2019, Committee staff reiterated by email to OLA that, absent substantial compliance with the Committee's request, the Committee would have no choice but to move towards compulsory process. Committee staff also requested that the Department advise the Committee whether it would begin to produce any documents and, if so, what schedule the Department anticipated following.

OLA did not respond until May 3 – after the Committee's May 2 document production deadline had already passed – and stated that the Department had already taken "meaningful steps" in responding to the Committee's April 25 letter. The Department cited to (1) its unilateral decision to allow only the Chairman and Ranking Member, along with one staff member each, to review a less-redacted version of the Special Counsel's report with onerous review restrictions – an offer that had already been rejected by the Committee on April 19 – and (2) a brief phone call the Committee staff held with the Federal Bureau of Investigation (FBI) regarding procedural matters unrelated to the substantive work of the Special Counsel's Office. Neither of these responses amounted to a good faith effort to negotiate an accommodation of the Committee's request.

That same day, Committee staff cautioned, again, that the Department's refusal to begin complying in any meaningful way with the Committee's actual document request would leave it no choice but to resort to compulsory process. Committee staff also underscored that the Department's onerous access restrictions for the less-redacted version of the report were unacceptable and did not constitute a reasonable accommodation. Committee staff further reminded the Department that it provided the Committee during the last Congress an expansive and voluminous production of classified and sensitive records pertaining to closed and ongoing investigations, including this very same investigation. In fact, on July 6, 2018, the Department informed our Committee that it had provided more than 880,000 pages of documents related to the FBI investigation into former Secretary of State Hillary Clinton's use of a private email server, as well thousands of pages of responsive documents related to the then-ongoing investigation into Russia's interference in the 2016 presidential election (see enclosed letter). These materials were of the precise type the Department now claims it is prohibited from giving to the full Committee, including classified and law enforcement sensitive information, documents related to third parties, and those pertaining to ongoing investigations.

Finally, Committee staff again communicated with the Department on May 7 as part of the Committee's continuing yet unreciprocated effort to reach a reasonable accommodation. Staff asked once again to meet with the Department to discuss a reasonable accommodation of the Committee's request. Committee staff emphasized yet again that the Committee had yet to receive a meaningful response or a single document from the Department and that, despite the Committee's best efforts to negotiate in good faith, the Department has repeatedly missed deadlines set by the Committee without explanation. For a final time, Committee staff reiterated that if the Committee did not receive meaningful compliance, the Committee would have no

choice but to consider alternative courses of action, including compulsory process. This meeting request remains unfulfilled.

The Department's failure to engage and negotiate with the Committee, and its failure to comply in any meaningful way with the Committee's bipartisan document request, necessitates the issuance of the attached subpoena.

As outlined in the subpoena schedule, the Committee requests (1) the complete and unredacted version of the report submitted by Special Counsel Robert S. Mueller III; (2) all documents and materials, regardless of form and classification, referenced in the unredacted report; and (3) all documents and materials, regardless of form and classification, obtained or generated by the Special Counsel's Office in the course of its investigation referring or relating to (a) any foreign individuals or entities of any type, (b) any persons or entities associated with or acting in any capacity as a representative, agent, or proxy for any such foreign individuals or entities, (c) any communications, interactions, or links between or about U.S. persons and such foreign individuals or entities, and (d) any effort to influence, impede, or obstruct congressional investigations.

The attached subpoena schedule, moreover, makes clear that the Committee's demand includes material that contains or relates to grand jury information. Pursuant to the National Security Act and the Federal Rules of Criminal Procedure, the Committee is entitled as a matter of law to all foreign intelligence and counterintelligence information contained in the Special Counsel's report, as well as the underlying evidence and information obtained or generated by the Special Counsel's Office.[1] Rule 6(e) of the Federal Rules of Criminal Procedure, moreover, poses no bar to disclosure to the Committee of grand jury material involving foreign intelligence or counterintelligence.[2]

The fact that evidence and information may have been gathered during a criminal investigation, including through the grand jury process, and may be unclassified in no way diminishes its nature as foreign intelligence or counterintelligence information that must be

---

[1] *See* 50 U.S.C. § 3092 (requiring, among other things, that the heads of all departments, agencies, or entities of the United States government involved in intelligence activities keep the congressional intelligence committees fully and currently informed of all intelligence activities, and to furnish to the congressional intelligence committees upon request any information or material concerning intelligence activities which is within the custody or control of the departments, agency, or entity of the United States government); *see also* 50 U.S.C. § 3003(1) (defining "intelligence" to include "foreign intelligence" and "counterintelligence").

[2] To the extent any such information relates to grand jury matters, Rule 6(e) of the Federal Rules of Criminal Procedure poses no bar to disclosure of such materials to the Committee. Under the exception set forth in Rule 6(e)(3)(D), the Department of Justice may disclose to the Committee "any grand-jury matter involving foreign intelligence, counterintelligence [], or foreign intelligence information," as well as any grand-jury matter involving "grave hostile acts of a foreign power," "a threat of domestic or international sabotage or terrorism," or "clandestine intelligence gathering activities by an intelligence service or network of a foreign power." Fed. R. Crim. P. 6(e)(3)(D).

3

provided to the Committee.[3] This includes information regarding efforts by the Russian government or other foreign actors to contact or communicate with Americans. For example, overtures from the Russian government to a presidential campaign, such as the June 9, 2016, meeting at Trump Tower, were relevant to the Special Counsel's criminal investigation, but such outreach by foreign actors to Americans also constitutes important and relevant information for foreign intelligence and counterintelligence purposes. The Special Counsel's report is replete with similar information about contacts between Russian officials, agents, or proxies with U.S. persons, all of which involve foreign intelligence and counterintelligence equities, even if not classified.

For the reasons outlined above, the Committee's resort to compulsory process is necessary and due to the Department's failure to comply with the Committee's repeated requests. Consistent with Rule 10 of the Committee's Rules of Procedure for the 116th Congress, the Committee therefore commands by subpoena that the Department produce the documents identified in the attached subpoena schedule by 3 p.m. on **Wednesday, May 15, 2019**.

Please have the Department contact the Committee Majority Staff at (202) 225-7690 to coordinate the production.

Sincerely,

Adam B. Schiff
Chairman

---

[3] Counterintelligence information is defined as "information gathered ... to protect against espionage [and] other intelligence activities ... conducted by or on behalf of foreign governments ... foreign organizations, or foreign persons[.]" 50 U.S.C. § 3003(3). Foreign intelligence information is defined as is "information relating to the capabilities, intentions, or activities of foreign governments or elements thereof, foreign organizations, or foreign persons [...]." 50 U.S.C. § 3003(2).

Enclosures:

1. *Subpoena, Schedule A, Instructions and Definitions, and Committee Rules of Procedure*

2. *Letter from Chairman Adam B. Schiff and Ranking Member Devin Nunes to Attorney General William P. Barr, Deputy Attorney General Rod J. Rosenstein, Director Christopher Wray (March 27, 2019)*

3. *Letter from Chairman Adam B. Schiff and Ranking Member Devin Nunes to Attorney General William P. Barr, Deputy Attorney General Rod J. Rosenstein, Director Christopher Wray (April 25, 2019)*

4. *Letter from Assistant Attorney General Stephen E. Boyd to the House Judiciary Committee and House Permanent Select Committee on Intelligence (July 6, 2018)*