# EXHIBIT P

*FILED UNDER SEAL w/*
*CHRISTOFFERSON, 3/5/74—*
*NOT SERVED UPON DEFENSE*
*COUNSEL — PHR*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE REPORT AND RECOMMENDA- :
TION OF JUNE 5, 1972 GRAND     :
JURY CONCERNING TRANSMISSION   :     Misc. No.
OF EVIDENCE TO THE HOUSE OF    :
REPRESENTATIVES                :

---

MEMORANDUM FOR THE UNITED STATES
ON BEHALF OF THE GRAND JURY

On March 1, 1974, the June 5, 1972 Grand Jury returned an indictment charging seven persons with various criminal offenses in the so-called Watergate affair.  United States v. Mitchell, et al., Crim. No. 74-110.  At the same time the Grand Jury submitted to the Court, under seal, a Report and Recommendation that stated that it had heard evidence relating to the impeachment inquiry currently being conducted by the Committee on the Judiciary of the House of Representatives, and that it had concluded that it should presently defer to the House and allow the House to determine what action may be warranted by this evidence at this time.  The Grand Jury then recommended strongly and unanimously that the evidence referred to, and contemporaneously submitted to the Court, should be transmitted forthwith to the House Judiciary Committee, with the further recommendation that the Committee be informed of the Grand Jury's belief that the evidence should be utilized with due regard for avoiding any unnecessary interference with the Court's ability to conduct fair trials of persons under indictment.

Counsel for certain defendants in the case of United States v. Mitchell, et al. have sought to challenge the

Court's power to honor the Grand Jury's recommendation.  As
counsel for the United States and the Grand Jury, we submit
this memorandum in support of that recommendation.  We shall
show that regular grand juries of the federal courts have
inherent power to make reports and recommendations of this
type, that the Court has the right to honor the recommenda-
tion in the present matter, and that it is clearly in the
overall public interest to do so.  Counsel for defendants in
United States v. Mitchell, et al. have not demonstrated such
a compelling interest in these present proceedings to warrant
acceding to their request for suppression of the Grand Jury's
report and disregard of its recommendation.

## I.   THE ROLE OF THE GRAND JURY

As this Court and the Court of Appeals recognized in
enforcing the Grand Jury's subpoena for Presidential tapes
and documents, the grand jury is a unique institution in our
constitutional system, with great responsibilities and com-
mensurate powers, even in matters directly affecting the
President.  In assessing the right of the Grand Jury in the
Watergate investigation to make a report to the Court in
addition to the indictment it has returned, it is important
to bear in mind that the grand jury's "constitutional prerog-
atives are rooted in long centuries of Anglo-American history"
and that the grand jury holds a "high place . . . as an
instrument of justice."  Branzburg v. Hayes, 408 U.S. 665,
687 (1972).

The grand jury owes its fundamental role in the criminal
justice process to its adoption by the Fifth Amendment as the
basic mechanism for determining whether to charge a person
with a serious federal crime.  Even though it is generally

- 2 -

considered an adjunct of the Judicial Branch, the grand jury's
constitutional status gives it an independence -- with authority
derived from the people -- similar to its traditional role at
common law.   Thus, the grand jury can act on its own initiative,
without submissions from the prosecutor,[1] and "it may make
presentments of its own knowledge without any instruction or
authority from the court."[2] As the Supreme Court held in re-
versing the dismissal of an indictment that had been returned
by a second grand jury without securing prior leave of court,
"the power and duty of the grand jury to investigate is orig-
inal and complete . . . and is not therefore dependent for its
exertion upon the approval or disapproval of the court. . . ."[3]

The grand jury, composed of laymen randomly selected,
serves as the "conscience of the community."  It may elect not
to charge a crime, even if probable cause has been demonstrated,
and this decision is "not subject to review by any other body";
of course, its "sweeping powers" over the terms of any charges
it does return "entail very strict limitation upon the power
of the prosecutor or court to change the indictment found by
the jurors."  Gaither v. United States, 413 F.2d 1061, 1066
(D.C. Cir. 1969).

---

[1]  See generally Hale v. Henkel, 201 U.S. 43, 59-66 (1906).
United States v. Cox, 342 F.2d 167, 186-189 (5th Cir.) (Wisdom,
J., concurring), cert. denied, 381 U.S. 935 (1965).

[2]  In re April 1956 Term Grand Jury, 239 F.2d 263, 268
(7th Cir. 1956).  See also, In re Dymo Industries, Inc., 300
F. Supp. 532, 533 (N.D. Calif.), aff'd on opinion below, 418
F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937 (1970).

[3]  United States v. Thompson, 251 U.S. 407, 413 (1920).
Despite its "supervisory power" over the grand jurors, the court
"cannot limit them in their legitimate investigation of alleged
violations of law."  Application of Texas Co., 27 F. Supp. 847,
850 (E.D. Ill. 1939).  Accord, Blair v. United States, 250 U.S.
273, 282 (1919); Bursey v. United States, 466 F.2d 1059, 1071,
1075 (9th Cir. 1972)

- 3 -

One of the important collateral consequences of the grand
jury's independence is its right to insist that the prosecuting
attorney prepare the charges it believes are warranted.[4/]   Chief
Judge Fee, in his exhaustive and frequently quoted discussion
of the grand jury, summarized the independence of the grand
jury in these words:

> Unquestionably, the grand jury are under
> no necessity to follow the orders of the
> prosecutor.  They can present an indict-
> ment whether he will or no.  Indeed, they
> may make a presentment contrary to the
> direct orders of a judge, the prosecutor
> for the King or the Chief Executive. [5/]

Because of this independent status, a grand jury is even
entitled to return, in open court, a draft indictment the
United States Attorney refuses to sign.  In short, the grand
jury has the right to report to the court its decision about
what is proper and to do so publicly, at least in the absence
of the likelihood of irreparable injury to innocent persons.[6/]

---

[4/]  The leading case in this area is United States v. Cox,
342 F.2d 167 (5th Cir.), cert. denied, 381 U.S. 935 (1965),
where four of seven judges of the court of appeals en banc held
that the court can order the United States Attorney to assist
the grand jury by drafting "forms of indictment in accordance
with its desires" (342 F.2d at 181, 182), but a different 4-3
combination ruled that the prosecutor cannot be compelled to
give the concurrence of the Executive Branch, which they con-
cluded is necessary to initiate an actual prosecution (342 F.2d
at 171-172, 182).

The District of Columbia Circuit recognized the same prin-
ciple in Gaither v. United States, supra, 413 F.2d at 1069.
Chief Judge Roszel Thomsen of the District of Maryland also
reached this conclusion in his thorough opinion.  See In re
Presentment of Special Grand Jury, January 1969, 315 F. Supp.
662, 674 (1970).

[5/]  United States v. Smyth, 104 F. Supp. 283, 294 (N.D.
Calif. 1952) (footnotes omitted); In re Miller, 17 Fed. Cas.
(No. 9,552) (C.C.D. Ind. 1878).

[6/]  See Rule 6(f), Federal Rules of Criminal Procedure:
"The indictment shall be returned by the grand jury to a judge
in open court."  Under Rule 6(e), the court has power to direct
that an indictment "shall be kept secret until the defendant is
in custody."  The rules do not provide any other grounds for
sealing the proposed charge.
(Footnote continued on next page)

- 4 -

## II.   THE GRAND JURY'S POWER TO
## RETURN A REPORT

The foregoing discussion suggests one source of the grand jury's power to submit a report that does not constitute a formal indictment because, for example, the prosecuting attorney refuses to sign it and give it prosecutive effect.

The Court of Appeals for this Circuit in its decisive ruling on grand jury procedure has expressly recognized the power of a federal grand jury to make a "presentment" that does not constitute an indictment:

> Even today the grand jury may investi-
> gate, call witnesses and make a present-
> ment charging a crime. However, the
> presentment, even if otherwise an ade-
> quate charge, cannot serve as an indict-
> ment and hence initiate a prosecution
> under the Federal Rules [of Criminal
> Procedure] until approved by a United
> States Attorney. Gaither v. United
> States, 413 F.2d 1061, 1069 n.19 (1969)
> (emphasis added).

Thus, there is no reason for concluding that a federal grand jury is limited, as counsel for defendants Haldeman and Ehrlichman in United States v. Mitchell et al. contend, to the options either to "indict or ignore."

The weight of modern authorities, moreover, shows that federal grand juries have the power to formulate and submit other kinds of reports as well, even if the grand jury is not proposing the indictment of any particular individual.

---

(continuation of footnote 6)

See generally, In re Presentment of Special Grand Jury, January 1969, supra, 315 F. Supp. at 667, 676-677, where a circuit judge initially ordered Judge Thomsen to consider these novel questions in camera but after review of the legal issues, Judge Thomsen ruled, relying on United States v. Cox, supra, that the proposed indictment is to be returned in open court.

- 5 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 199

As Judge Thomsen of the District Court for the District
of Maryland recently concluded:

> The common law powers of a grand jury
> clearly include the power to make present-
> ments, sometimes called reports, calling
> attention to certain actions of public
> officials, whether or not they amounted
> to a crime. 7/

That common law power to submit reports is preserved by the

grand jury's constitutional status.  The Supreme Court's land-

mark decision on the attributes of the grand jury, Hale v.

Henkel, supra, specifically refers to the source of this power:

> Indeed, the oath administered to the fore-
> man, which has come down to us from the
> most ancient times, and is found in
> Shaftesbury's Trial, 8 How. St. Tr. 769,
> indicates that the grand jury was compe-
> tent to act solely on its own volition.
> This oath was that "you shall diligently
> inquire and true presentments make of all
> such matters, articles, and things as
> shall be given you in charge, as of all
> other matters, articles, and things as
> shall come to your own knowledge touching
> this present service," etc.  201 U.S. at
> 60.  (emphasis added) 8/

Thus Judge Brown observed, without challenge from the other

judges sitting on the en banc Fifth Circuit in Cox, supra:

---

7/  In re Presentment of Special Grand Jury, January 1969,
supra, 315 F. Supp. at 675.  See generally, Kuh, The Grand Jury
"Presentment":  Foul Blow or Fair Play?, 55 Colum. L. Rev. 1103
(1955); Note, The Grand Jury as an Investigatory Body, 74 Harv.
L. Rev. 590 (1961), which discuss the origins of the grand
jury's common law power to make reports.

8/  After the dismissal of Special Prosecutor Cox, this
Court promptly summoned the Watergate Grand Jury and the
Additional August 1973 Grand Jury, which had been specially
empanelled at the Special Prosecutor's request, and in open
court instructed them "to fully and strictly adhere" to the
traditional oath they had taken.  The Court quoted the oath in
full, including the pledge to make "true presentment" of all
offenses and not to leave "anyone unpresented from fear, favor,
affection, reward, or hope of reward."  See Statement of Chief
Judge Sirica to Members of Grand Juries, October 23, 1973.

- 6 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 200

> To me the thing seems this simple:
> the Grand Jury is charged to report.
> It determines what it is to report.
> It determines the form in which it
> reports. 9/

The Fifth Circuit recently confronted this issue again,
and while it found it unnecessary to pass squarely on the mat-
ter, the court cited and discussed the "persuasive authority
and considerable historical data to support a holding that
federal grand juries have authority to issue reports which do
not indict for crime, in addition to their authority to indict
and to return a no true bill." In re Grand Jury Proceedings,
479 F.2d 458, 460 (5th Cir. 1973).

It is true, of course, that on a few occasions some
questions have been raised about the existence and scope of
this power of the federal grand jury. 10/ The federal case
generally cited against this power is Judge Weinfeld's opinion
in Application of United Electrical Radio & Machine Workers, 111
F. Supp. 858 (S.D.N.Y. 1953). 11/ That case involved unusual

---

9/ 342 F.2d at 184. See also 342 F.2d at 180 (opinion
of Rives, Gewin & Bell, JJ.), and 342 F.2d at 189 (opinion of
Wisdom, J.): "No one questions the jury's plenary power to in-
quire, to summon witnesses, and to present either findings and
a report or an accusation in open court by presentment."

10/ Such doubts are expressed in Orfield, The Federal Grand
Jury, 22 F.R.D. 343, 402, 446-447 (1959) and Senate Report 91-617,
91st Cong., 1st Sess. at 47 (1970), on the Organized Crime Con-
trol Act of 1970.

11/ Counsel for defendants Haldeman and Ehrlichman also
cite the decision in Poston v. Washington, Alexandria & Mt.
Vernon R.R., 36 App. D.C. 359 (1911), as establishing that,
"according to the law and practice in the District of Columbia"
a regular federal grand jury "has no power other than to indict
or ignore." That case establishes no such rule, however. What
was at issue there was the question whether the railroad company,
in an action against it for allegedly causing a state grand jury
of the Alexandria county circuit court to issue a libelous re-
port, could defend the report on the ground the report was covered by a
privilege for judicial immunity. The court of appeals held that
the report was not covered by a judicial privilege because it
was not a kind of presentment permitted by "the practice in the
State of Virginia." 36 App. D. C. at 369.

- 7 -

facts -- a grand jury's recommendations to the National Labor
Relations Board about the sufficiency of the "non-communist"
party membership affidavits submitted to the Board.  The twin
grounds for decision were that those recommendations over-
stepped the "judicial function" under the separation of powers
and violated the obligation of secrecy imposed by Rule 6(e).
111 F. Supp. at 863-866.  Both reasons are circular.  The grand
jury derives its authority from the people under the Consti-
tution, and as an institution has always exercised the function
of making recommendations on matters of public concern.  In
addition, there is no reason to believe that Rule 6(e) was
intended to cut off an historically proper function of the
grand jury.  For these reasons and others, later federal
decisions discussed in this memorandum have refused to follow
Judge Weinfeld's decision there.

Nor is there any reason to infer that Congress has
stripped regular federal grand juries of their historic --
although infrequently exercised -- power to submit reports.
The argument to this effect is based on the enactment in the
Organized Crime Control Act of 1970 of explicit procedures by
which a newly created institution -- a "special grand jury" --
can prepare and file a report dealing with public corruption
or organized crime conditions.  See 18 U.S.C. §3333.  The
Senate report on that bill, S. Rep. 91-617, supra, p. 47, did
take note of Judge Weinfeld's decision and conclude that
explicit statutory authority would be necessary to confer such
power; the Committee was apparently unaware, however, of the
intervening decisionslike In re Petition for Disclosure of
Evidence Before October 1959 Grand Jury, 184 F. Supp. 38 (E.D.
Va. 1960), and United States v. Cox, supra, 342 F.2d 167,
which uphold such power.  Certainly there is not a word in the

- 8 -

legislative history of the 1970 Act suggesting that Congress
intended to restrict the power of <u>regular</u> grand juries if, as
we contend and as later cases have held, Judge Weinfeld's
decision was wrong. [12/]

   With the exception of that decision, federal decisions
reflect a number of different types of grand jury reports that
have been found permissible.  One type is the draft indict-
ment, or "presentment", that accuses named individuals of
criminal misbehavior but does not actually constitute a valid
indictment in the face of the prosecuting attorney's refusal
to sign it. [13/]  A second is a report analyzing local conditions
and making recommendations about law enforcement policy. [14/]
Third, and most pertinently here, is a report that discloses
to the court that the grand jury has heard evidence that it
believes is material to legal proceedings within the juris-
diction of another agency and recommends that the court exer-
cise its inherent power, as codified in Rule 6(e), to submit
the evidence to the appropriate officials. [15/]

---

   12/   Indeed, Judge Weinfeld himself recognized that in the
sixteen years prior to his 1953 decision, regular federal grand
juries in the Southern District of New York had filed at least
fourteen reports "without challenge." <u>Application of United
Electrical, Radio & Machine Workers</u>, <u>supra</u>, 111 F. Supp. at 869.

   13/   See <u>e.g.</u>, <u>United States</u> v. <u>Cox</u>, <u>supra</u>, 342 F.2d 167;
<u>In re Presentment of Special Grand Jury, January 1969</u>, 315 F.
Supp. 662.

   14/   See <u>e.g.</u>, <u>In re Grand Jury Proceedings</u>, <u>supra</u>, 479
F.2d 458.

   15/   See, e.g., <u>In re Petition for Disclosure of Evidence
Before October 1959 Grand Jury</u>, 184 F. Supp. 38, 40 (E.D. Va.
1960).

- 9 -

### III.   THIS COURT SHOULD HONOR THE
### RECOMMENDATION OF THE GRAND
### JURY

Even though the grand jury is empanelled by the court,
relies on the coercive process of the court, and submits its
indictments or reports to the court,[16] the grand jury's
independent constitutional status necessarily implies that the
court cannot generally superintend the grand jury in the exer-
cise of its lawful discretion or refuse to give full credit to
its decision.[17]

Speaking of the "stubborn tenacity" of the grand jury
that has developed to complement the independence of the judge,[18]
Chief Judge Fee explained:

> While the court may exercise an in-
> fluence over the proceedings, there is
> neither a method whereby an indictment
> by a grand jury can be peremptorily re-
> quired, nor, on the other hand, is there
> any method of preventing the presentment
> of an indictment except by summary dis-
> charge. [19]

Once the grand jury has submitted a report or presentment
to the court, as here, the court does have the power to expunge
it, in whole or in part, to the extent it is found illegal or
unwarranted.[20]  But under the standards that have been developed,
there is no justification for rejecting the Report and Recom-
mendation of the Grand Jury in the present case.

_____

[16] See generally, Rule 6, Federal Rules of Criminal Pro-
cedure, 18 U.S.C. §§ 3321, 3331-3334.

[17] See, e.g., Ex parte United States, 287 U.S. 241, 249
(1932); In re Texas Co., 201 F.2d 177, 180 (D.C. Cir.), cert.
denied, 344 U.S. 904 (1952).

[18] United States v. Smyth, supra, 104 F. Supp. at 293.

[19] Id. at 292 (footnote omitted).

[20] See generally, Orfield, supra, 22 F.R.D. at 446-447.

- 10 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 204

Judge Thomsen recently formulated the proper inquiry the
court should make when confronted with the question of possible
suppression of a grand jury report:

> The Court is the agency which must weigh
> in each case the various interests involved,
> including the right of the public to know
> and the rights of the persons mentioned in
> the presentment, whether they are charged
> or not.  The Court should regulate the
> amount of disclosure, to be sure that it is
> no greater than is required by the public
> "interest in knowing" when weighed against
> the rights of the persons mentioned in the
> presentment.  In re Presentment of Special
> Grand Jury, January 1969, supra, 315 F. Supp.
> at 678.

In that case a federal grand jury in Baltimore had been in-
vestigating possible corruption in connection with federal
construction contracts, and returned a number of indictments.
The grand jury foreman then appeared in open court to read a
"presentment" that described the course of the extensive in-
vestigation; the presentment also stated that the grand jury
was prepared to return further indictments against additional
defendants, that the United States Attorney was prepared to
concur in signing the indictments, but had been directed by the
Attorney General not to do so.  The foreman delivered the pro-
posed indictments to the court under seal.  The court solicited
the views of the Department of Justice and specially appointed
amicus curiae on whether the "presentment" should be kept
secret.  In the interim, several persons claiming they believed
they were named in the proposed indictments appeared anonymously
through counsel and moved for suppression and expungement of
the "presentment" and the proposed indictments.  After con-
sidering all the positions, the court concluded:

> It is not necessary in this case to
> attempt to lay down a rule which should
> apply in all situations.  Each case should
> be decided on its own facts and circum-
> stances.  Here, there has been much dis-
> cussion and disclosure in the communica-
> tions media, some true, and some not true,

- 11 -

> particularly during the last few days.
> The people who have been investigated
> have been disclosed, and there have been
> rumors in the press naming persons who
> it does not appear have even been inves-
> tigated.  Under these circumstances, the
> Court concludes that the substance of
> the charges in the indictment should be
> disclosed, omitting certain portions as
> to which the Court, in the exercise of
> its discretion, concludes that the pub-
> lic interest in disclosure is outweighed
> by the private prejudice to the persons
> involved, none of whom are charged with
> any crime in the proposed indictment.
> 315 F. Supp. at 678-679.

The court thereupon filed a summary of the proposed indict-
ment ("presentment"), including the names of the proposed
defendants and the allegations against them, and also including
the names of the federal officials (Sen. Russell Long, Rep. Hale
Boggs, and the Architect of the Capitol) who were the intended
bribe recipients but who were not charged with actually receiving
any money.

In the present case, the test points inevitably toward
honoring the grand jury's recommendation.  The Report and
Recommendation deals exclusively with evidence concerning the
President, not any of the defendants in United States v.
Mitchell, et al.  Furthermore, the identities of the other
people investigated have been discussed at length in the course
of public proceedings before the United States Senate and else-
where.  To the extent that any defendants in criminal proceed-
ings are involved indirectly, they are already the subject of
the Grand Jury's formal accusation and will have an opportunity
to litigate their guilt or innocence on the charges at the
trial of the pending indictment.

The "public interest" in granting the Grand Jury's
recommendation is paramount here.  After receiving a great
volume of evidence concerning the President of the United States,
the Grand Jury has decided at this time to defer to the House

- 12 -

of Representatives and has recommended that this material be furnished to the House in order that it may discharge its primary responsibility under the Constitution on this question of the gravest national concern.

The very recent decision of the Fifth Circuit in In re Grand Jury Proceedings, 479 F.2d 458 (1973), also supports the Grand Jury's action here.  In that case a federal grand jury had investigated the circumstances surrounding dismissal of state narcotics charges because of the possibility that there was a conspiracy to discredit a federal agent who had testified in the case and had given testimony before the grand jury that led to several indictments.  The grand jury found no criminal violations, but filed a report commenting on the extent of the local narcotics problem, urging the local district attorney to prepare his case and his witnesses better, and criticizing the state judge for prematurely dismissing the case.  The district court had accepted the grand jury's request that the report be filed as a public record.  Upon the denial of the state judge's motion to expunge the report, the court of appeals reversed in part.  After citing the persuasive authority for the grand jury's power to file reports and after noting some of the factors that the courts have traditionally considered in deciding whether to expunge some or all of a grand jury report, the appellate court ordered deleted those portions of the report that referred specifically to local officials because, under the circumstances, that criticism served no legitimate federal interest.  Among the factors listed as pertinent to the decision of any court faced with this question were:  whether the report describes general community conditions or identifiable individuals; whether the individuals are public officials or only private citizens; whether the public interest in the

- 13 -

contents of the report outweighs any harm to named individuals;
whether the conduct described is indictable; and whether there
are other remedies available to the persons involved.   479 F.2d
at 460 n.2.  Here, of course, the Report and Recommendation,
together with the underlying material, focus on the President,
and are designed to enable the House to conduct a full and
fair inquiry.  Other persons are involved only indirectly.
Those persons who are not under indictment have already been
the subject of considerable public testimony and will no doubt
be involved in further testimony, quite apart from the Grand
Jury's Report and Recommendation.  And those persons who are
under indictment have a clear remedy open to challenge any
incidental references to them -- in their trials.

Finally, similar issues arose in a related context when a
federal grand jury in the Eastern District of Virginia submitted
an oral and a written statement to the court recommending that
the court transmit to city and state officials some of the
evidence the grand jury had heard.[21/]  Sparked by that recommenda-
tion, the State Attorney General and the local district attorney
applied for disclosure of the evidence.  The United States
opposed the release of the evidence until related indictments
returned by the grand jury could be tried.  Chief Judge Bryan
termed the grand jury's suggestion of referral of the evidence
to local authorities "wholly proper," but commented that the
report should have been confined to a simple recommendation to
that effect, without contemporaneous disclosure of "the tenor
or purport of the evidence before them" or of "the implications

---

21/  In re Petition for Disclosure of Evidence Before the
October 1959 Grand Jury, supra, 184 F. Supp. 38.

- 14 -

the jurors drew from this evidence."[22]/ (The Grand Jury in the
present matter, of course, has scrupulously followed that
caveat.)   Judge Bryan ruled that the normal strictures of grand
jury secrecy are relaxed "whenever the public interest would be
better served by delivering up the grand jury evidence."  Since
the local prosecutor had shown a legitimate need for the evi-
dence in discharging his official responsibilities to investi-
gate and prosecute criminal offenses, the court granted the
application.[23]/   The court ordered the United States Attorney to
make the testimony available, through the clerk of the court,
for the local prosecutor to review it.   The court also urged
the local prosecutor to keep the information confidential "as
far as practicable" and also acceded to the United States
Attorney's request that the access await the disposition of
the pending federal charges.  184 F. Supp. at 41.

     We have already discussed the reasons why the "public
interest" in the present matter would undoubtedly be served
by "delivering up the grand jury evidence" to the House of
Representatives with the appropriate request that it be used
in a way to minimize any impact on criminal trials.  In making
its Report and Recommendation, the Grand Jury was respecting
the tradition of the House of Representatives which recognizes
as an authoritative precedent the action of a county grand jury
in returning a presentment specifying charges against a federal
territorial judge which were duly transmitted to the House for
its consideration of possible impeachment of that official.

_____

     22/  184 F. Supp. at 40.

     23/  The court ruled that the provision of Rule 6(e),
authorizing disclosure "preliminarily to or in connection with
a judicial proceeding," is not confined to proceedings in fed-
eral courts.  184 F. Supp. at 41.

- 15 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 209

3 Hinds' <u>Precedents of the House of Representatives</u> §2488 at

985 (1907). 24/

Nothing in the ordinary principle of grand jury secrecy

codified in Rule 6(e) of the Federal Rules of Criminal Pro-

cedure stands in the way of granting the Grand Jury's recom-

mendation.  The Rule leaves the Court with discretion to lift

this secrecy when a sufficiently strong showing of need is

made.  See, <u>e.g.</u>, <u>United States</u> v. <u>Proctor & Gamble Co.</u>, 356

U.S. 677 (1958); <u>Allen</u> v. <u>United States</u>, 390 F.2d 476 (D.C.

Cir. 1968).  The "need" for the House to be able to make its

profoundly important judgment on the basis of all available

information is as compelling as any that could be conceived.

Furthermore, the provision of Rule 6(e) that the Court

may permit disclosure of grand jury proceedings "preliminarily

to or in connection with a judicial proceeding" establishes no

obstacle.  It would be fatuous to contend that Rule 6(e) rele-

gates the need of a Presidential impeachment inquiry to a

lower priority than, for example, that of a civil antitrust

inquiry.  In any event, the term "preliminarily to . . . a

judicial proceeding" has been construed flexibly.  See, <u>e.g.</u>,

<u>Doe</u> v. <u>Rosenberry</u>, 255 F.2d 118, 120 (2d Cir. 1958);

<u>Jochimowski</u> v. <u>Conlisk</u>, ___ F.2d ___ (7th Cir. December 27,

1973) (14 Crim. L. Rep. 2391), authorizing disclosure of grand

jury evidence to a state bar grievance committee and to a

police disciplinary investigation, respectively.  The function

---

24/ That matter arose in 1811, shortly after the adoption
of the Constitution.  The House appointed a select committee to
investigate the grand jury's charges, and the committee found
that they were not supported by the evidence.

Jefferson's <u>Manual of Parliamentary Practice</u> states that
impeachment may be set "in motion" "by charges transmitted from
a grand jury."  Deschler, <u>Constitution, Jefferson's Manual, and
Rules of the House of Representatives</u>, H. R. Doc. No. 384, 92d
Cong., 2d Sess., §603 at 296.

- 16 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 210

of the House of Representatives in a Presidential impeachment inquiry, in deciding whether to prefer charges for "treason, bribery, or other high crimes and misdemeanors," is akin to that of a grand jury.  Impeachment also results in a judicial trial before the Senate sitting as a Court of Impeachment with the Chief Justice of the United States presiding.

The final point to be considered is the objection of some defendants in United States v. Mitchell, et al. that transmittal of grand jury materials to the House would prejudice them and, therefore, that the Grand Jury's Report and Recommendation should be suppressed.

In asserting their "legal" interest in interposing this objection, defendants rely on Judge Weinfeld's decision in Application of United Electrical, Radio & Machine Workers, supra, and on the decision in Hammond v. Brown, 323 F. Supp. 326 (N.D. Ohio), aff'd on opinion below, 450 F.2d 480, 482 (6th Cir. 1971).  Each of those cases, however, involves a grand jury report lodging formal accusations against the individuals objecting to the report.  The case before this Court is far different.  The Grand Jury Report and Recommendation submitted to the Court does not even refer to the defendants in United States v. Mitchell, et al., much less formally accuse them of misconduct or wrongdoing.  Indeed, as the Report indicates, its object is merely to bring to the Court's attention that the Grand Jury has evidence that has a material bearing on the matters now before the House of Representatives Committee on the Judiciary and to recommend that this evidence be transmitted to that Committee.  Any reference to defendants stems solely from the evidence accompanying the Report and is wholly incidental to its objective.  Defendants are in no sense the "targets" of the Report.

- 17 -

Nor can they invoke the objection in <u>Application of United Electrical, Radio & Machine Workers</u>, that they are being deprived "of the right to defend themselves and to have their day in a Court of Justice." 111 F. Supp. at 861. Defendants are the subjects of an indictment resulting from the same Grand Jury investigation underlying the Report and Recommendation, and it must be presumed that they will receive a fair and speedy trial in accordance with the Fifth and Sixth Amendments, the Federal Rules of Criminal Procedure, and the Rules of this Court. In short, the concerns expressed by Judge Weinfeld are inapplicable here -- defendants will have their day in court and the opportunity to answer all charges against them.

The decision in <u>Hammond</u> also does not support the claim for relief here. In that case, a federal court in a civil rights action under 42 U.S.C. §1983 ordered expunged and destroyed a public report filed by a <u>state</u> grand jury after investigation of the Kent State tragedy. The narrative report accused unnamed but identifiable faculty members of responsibility for the tragic consequences of the demonstration because of certain public statements they had made. The court concluded that the report exceeded the grand jury's powers under <u>Ohio</u> law; invaded the function of the petit jury by purporting to make findings of fact, rather than allegations based solely on probable cause; and violated requirements of grand jury secrecy. None of those objections can be levelled against the Report and Recommendation in the present matter, which merely requests transmittal of material concerning the President to another tribunal for any action it considers appropriate.

Significantly, the court concluded that even the accusatory report submitted there had <u>not</u> denied the identifiable

- 18 -

individuals any rights to due process, to confront witnesses, and to be informed of specific charges under the Fifth, Sixth, and Fourteenth Amendments, but that in the circumstances the report had violated First Amendment rights of free speech and free association.  See 323 F. Supp. at 337-351.

Defendants also may be concerned that they may be prejudiced by pre-trial publicity attributable to the Report, to the transmittal of the material, and to any subsequent use of the material by the Congress.  That concern is wholly speculative.  Although it is true that these events may provide one more instance of pre-trial publicity that defendants will be able to cite in support of a claim that the Court will not be able to empanel an unbiased jury for the trial of the charges now pending against these defendants, see, e.g., Delaney v. United States, 199 F.2d 107 (1st Cir. 1952), the existence of pre-trial publicity does not support, ipso facto, a claim of prejudicial publicity.  The courts "are not concerned with the fact of publicity but with the assessment of its nature."  Silverthorne v. United States, 400 F.2d 627, 631 (9th Cir. 1968), cert. denied, 400 U.S. 1022 (1971).  At this time it is impossible to assess the precise impact of any such publicity on forthcoming trials, but certain factors lead us to believe that the impact will be minimal.

First, the degree of publicity will depend on how the materials are used.  The Grand Jury has asked expressly in its Report and Recommendation that the materials transmitted be received, considered, and utilized with due regard for avoiding unnecessary interference with the fair trials of any persons under indictment.  This is no idle hope.  The House Committee on the Judiciary recently promulgated rules specifically designed to guard against the publication of evidence considered

- 19 -

by the Committee or its staff pursuant to the impeachment inquiry. [25/] In addition to barring public disclosure unless authorized by a majority of the Committee in accordance with the Rules of the House of Representatives, the rules prohibit the copying or duplicating of all materials considered by the Committee or staff.  All materials will be stored in a secure area, and examination will be limited to Committee members and staff members in that area.  It can be expected under these circumstances that the Committee and its staff will use the Grand Jury materials with appropriate respect for the rights of defendants in pending criminal cases, restricting publication to the extent necessary for the impeachment in-quiry. [26/]

Second, any publicity stemming from the receipt and use of the Grand Jury material by the House of Representatives Committee on the Judiciary, as all prior publicity, will be largely factual and not inflammatory. [27/] It must be remembered, the issue presented for the courts is not whether a prospective juror is ignorant of the allegations surrounding a prosecution or the evidence on which it is based, or even whether he may have some impression about them, but whether "the juror can

---

25/  These rules, adopted on February 22, 1974, and entitled "Rules for the Impeachment Inquiry Staff" and "Procedures for Handling Impeachment Inquiry Material", are attached hereto as Exhibit "A".

26/  As reflected by Local Rule 1-27(c)(6) of this Court and by the pre-trial publicity order entered by the Court in United States v. Mitchell, et al. on March 1, 1974, the concern about minimizing pre-trial publicity concerning a criminal case cannot and should not "preclude the holding of hearings or the lawful issuance of reports by legislative . . . bodies."

27/  This situation is wholly unlike Sheppard v. Maxwell, 384 U.S. 333(1966), and Rideau v. Louisiana, 373 U.S. 723 (1963), where the Supreme Court reversed convictions for highly inflam-matory publicity harping on the guilt of particular individuals and creating the aura of public persecution.

- 20 -

lay aside his impression or opinion and render a verdict based
on the evidence presented in court." _Irvin_ v. _Dowd_, 366 U.S.
717, 723 (1961).  The Special Prosecutor is confident that
notwithstanding prior publicity, if jurors are selected with
the care required by the decisions in this Circuit, all
defendants will receive a fair trial.

Third, any speculation about the effect of pre-trial
publicity is premature.  Only at the _voir_ _dire_ for selecting a
jury can the court determine with measured assurance whether
it has become impossible to select an impartial jury.  The
governing rule for this Circuit, as well as the underlying
rationale, is stated in _Jones_ v. _Gasch_, 404 F.2d 1231, 1238-39
(D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968):

> The ultimate question . . . is whether
> it is possible to select a fair and
> impartial jury, and the proper occasion
> for such a determination is upon the
> voir dire examination.  It is then, and
> more usually only then that a fully
> adequate appraisal of the claim can be
> made, and it is then that it may be
> found that, despite earlier prognostica-
> tions, removal of the trial is unneces-
> sary.  Jurors manifesting bias may be
> challenged for cause; peremptory chal-
> lenges may suffice to eliminate those
> whose state of mind is suspect.  Fre-
> quently the problem anticipated works
> itself out as responses by prospective
> jurors evaporate prior apprehensions.
> (Emphasis added.)

If some impact is actually detected, the court can fashion
appropriate remedies, like a continuance or a change of venue,
to deal with the problem in a concrete setting.

Thus, under these circumstances, there are no weighty
factors tending to offset the compelling case for the Court to
exercise its power to honor the Grand Jury's recommendation.
The House of Representatives, by a vote of 410 to 4, has re-
solved that the Committee on the Judiciary "is authorized and

- 21 -

FOIA # 58707 & 58708 (URTS 16380) DocId: 70105888 Page 215

directed to investigate fully and completely whether suffi-
cient grounds exist for the House of Representatives to exer-
cise its constitutional power to impeach Richard M. Nixon,
President of the United States." H. Res. 803, 93d Cong., 2d
Sess. (February 6, 1974). There can be no question of the
overriding interest of the country in an expeditious and
informed inquiry. After careful consideration, the Grand Jury
has determined that it has evidence that has a material bear-
ing on this inquiry. Any delay in transmitting this evidence
-- for example, until after the trial of pending criminal
cases -- will needlessly impede the House in the discharge of
its critically important function. The integrity of the
Court's own processes is in no sense endangered because the
risk of prejudicial pre-trial publicity from following the
recommendation of the Grand Jury is minimal and there are
procedures for testing any such impact at a later time.

## IV.   CONCLUSION

Because the Court can fulfill its own responsibilities
while effectuating the proper constitutional roles of the
Grand Jury and the Congress, the overall public interest
clearly impels the Court to grant the Grand Jury's recom-
mendation that the evidence it identified and submitted be
transmitted forthwith to the Committee on the Judiciary of
the House of Representatives.

- 22 -

Respectfully submitted.


LEON JAWORSKI
Special Prosecutor



PHILIP A. LACOVARA
Counsel to the Special
   Prosecutor



PETER M. KREINDLER
Executive Assistant to the
   Special Prosecutor


Watergate Special Prosecution Force
1425 K Street, N. W.
Washington, D. C.   20005


Attorneys for the United States
   and the Grand Jury


DATED:   March 5, 1974


- 23 -