**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE:

APPLICATION OF THE COMMITTEE ON
THE JUDICIARY, U.S. HOUSE OF
REPRESENTATIVES, FOR AN ORDER
AUTHORIZING THE RELEASE OF
CERTAIN GRAND JURY MATERIALS

No. 19-gj-48 (BAH)

**REPLY OF THE COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF**
**REPRESENTATIVES, IN SUPPORT OF ITS APPLICATION FOR AN ORDER**
**AUTHORIZING THE RELEASE OF CERTAIN GRAND JURY MATERIALS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   Rule 6(e)'s Exception for Judicial Proceedings Encompasses Impeachments ........................ 3

    A.  DOJ's New Interpretation of Rule 6(e) Conflicts with D.C. Circuit Precedent and
    Contradicts DOJ's Own Past Positions .......................................................................... 3

    B.  DOJ's Restrictive Reading of Rule 6(e) Fails on Its Own Terms .................................... 9

II.  The Judiciary Committee's Investigation Is Preliminary to a Judicial Proceeding Within the
    Meaning of Rule 6(e) ..................................................................................................... 13

III. The Judiciary Committee Has Demonstrated a Particularized and Pressing Need ................ 18

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Am. Hosp. Ass'n v. Price*,
    867 F.3d 160 (D.C. Cir. 2017) ........................................................................4

*Cty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ..................................................................7

*Douglas Oil v. Petrol Stops Nw.*,
    441 U.S. 211 (1979) .............................................................................. *passim*

\*    *Haldeman v. Sirica*,
    501 F.2d 714 (D.C. Cir. 1974) (en banc) ....................................... *passim*

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
    139 S. Ct. 628 (2019) ......................................................................................13

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) ........................................................................4

*In re Application to Unseal Dockets Related to the Independent Counsel's 1998 Investigation of President Clinton*,
    308 F. Supp. 3d 314 (D.D.C. 2018) .....................................................4, 5, 12

*In re Grand Jury*,
    490 F.3d 978 (D.C. Cir. 2007) ......................................................................18

*In re Grand Jury Investigation*,
    916 F.3d 1047 (D.C. Cir. 2019) ......................................................................5

*In re Grand Jury Investigation of Uranium Indus.*,
    No. 78-cv-173, 1979 WL 1661 (D.D.C. Aug. 16, 1979) .........................11

\*    *In re Grand Jury Proceedings of Grand Jury No. 81-1 (Miami)*,
    669 F. Supp. 1072 (1987) ...................................................................... *passim*

*In re Petition to Inspect & Copy Grand Jury Materials*,
    735 F.2d 1261 (11th Cir. 1984) ....................................................................12

\*    *In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*,
    833 F.2d 1438 (11th Cir. 1987) ........................................................... *passim*

\*    *In re Report & Rec. of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*,
    370 F. Supp. 1219 (D.D.C. 1974) .........................................................4, 9, 18, 24

*In re Sealed Case*,
    494 F.3d 139 (D.C. Cir. 2007) ................................................................4

*In re United States*,
    872 F.2d 472 (D.C. Cir. 1989) ................................................................4

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880) ............................................................................10

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) (en banc) ..............................................5

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................................4

\* *McKeever v. Barr*,
    920 F.3d 842 (D.C. Cir. 2019) ..................................................... *passim*

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..............................................................................7

*Nixon v. United States*,
    506 U.S. 224 (1993) ............................................................................11

*PHH Corp. v. CFPB*,
    881 F.3d 75 (D.C. Cir. 2018) (en banc) ................................................4

*Senate Select Comm. on Pres. Campaign Activities v. Nixon*,
    498 F.2d 725 (D.C. Cir. 1974) ............................................................13

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ............................................................15

*Temple Univ. Hosp. v. NLRB*,
    929 F.3d 729 (D.C. Cir. 2019) ..............................................................7

*United States v. Baggot*,
    463 U.S. 476 (1983) .......................................................14, 15, 16, 17

*United States v. Liquidators of European Fed. Credit Bank*,
    630 F.3d 1139 (2011) ............................................................................7

*United States v. Rose*,
    28 F.3d 181 (D.C. Cir. 1994) ..............................................................15

*United States v. Sells Eng'g*,
  463 U.S. 418 (1983) ............................................................................ *passim*

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. Art. I, § 2 ...........................................................................13, 15

U.S. Const. Art. I, § 3 .......................................................................9, 10, 12

U.S. Const. Art. I, § 5 ...........................................................................13, 15

U.S. Const. Art. III, § 2 ...............................................................................10

2 U.S.C. § 25 ...............................................................................................19

5 U.S.C. § 3331 ...........................................................................................19

28 U.S.C. § 595 .............................................................................................4

Fed. R. Crim. P. 6 .................................................................................. *passim*

**Legislative Authorities**

H. Res. 430, 116th Cong. (2019) .................................................................16

H. Res. 851, 105th Cong. (1998) .................................................................16

H. Res. 803, 93rd Cong. (1974) ...................................................................16

H. Rep. No. 116-108 (2019) ...................................................................16, 23

H. Rep. No. 116-105 (2019) ...................................................................14, 23

H. Rep. No. 101-36 (1989) ...........................................................................16

H. Rep. No. 100-810 (1988) .........................................................................16

H. Rep. No. 99-688 (1986) ...........................................................................16

H. Rep. No. 93-641 (1973) ...........................................................................16

*Jefferson's Manual*, H. Doc. No. 114-192 (2017) ............................. 13, 15-16

*Deschler's Precedents of the United States House of Representatives* .........................................16

S. Rep. No. 93-981 (1974) ...........................................................................23

S. Doc. No. 106-4 (1999) ........................................................................................17

S. Doc. No. 104-1 (1995) ..................................................................................10, 11

House Permanent Select Committee on Intelligence, Minority Views (Mar. 26, 2018) ..............23

Committee on the Judiciary, Markup of Resolution for Investigative Procedures, 116th Cong. (Sept. 12, 2019) ..................................................................................................14

Letter from Chairman Schiff, House Permanent Select Committee on Intelligence, to Pat Cipollone, White House Counsel (Sept. 9, 2019) ...................................................21

*Pelosi Remarks Announcing Impeachment Inquiry* (Sept. 24, 2019) ........................................2, 14

Press Release, Committee on the Judiciary, Nadler Statement on White House Obstruction of Dearborn, Porter & Lewandowski Testimony (Sept. 16, 2019) ..............................................23

Testimony of Michael D. Cohen before the House Committee on Oversight and Reform (Feb. 27, 2019) ..............................................................................................................21

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ................................................................11, 12

Bryan A. Garner, et al., *The Law of Judicial Precedent* (2016) ......................................................6

*The Federalist* No. 66 (Alexander Hamilton) ................................................................11

Robert S. Mueller III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election* (2019) ............................................................................. *passim*

*Remarks by President Trump Before Marine One Departure*, White House (Apr. 24, 2019) ......23

## INTRODUCTION

The U.S. House of Representatives is conducting an inquiry to determine whether to impeach the President.  As part of that inquiry, the Committee on the Judiciary (Committee) seeks certain grand jury materials that are integral to its investigation.  The Department of Justice (DOJ) erroneously argues that this Court cannot disclose those materials to the Committee under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), which permits disclosure "preliminarily to … a judicial proceeding."  DOJ's argument conflicts with D.C. Circuit precedent and contradicts DOJ's longstanding position that impeachment proceedings fall within this provision.

During the House's investigation of President Nixon and Watergate, the D.C. Circuit held in *Haldeman v. Sirica* that Rule 6(e)'s judicial proceedings exception includes impeachments, as DOJ's Special Prosecutor had argued in that case.  501 F.2d 714, 715 (D.C. Cir. 1974) (en banc); *see id.* at 717 (MacKinnon, J., concurring in part and dissenting in part).  As DOJ explained to the D.C. Circuit then, the exception "has been construed flexibly" and interpreted to permit "disclosure of grand jury evidence to a state bar grievance committee and to a police disciplinary investigation."[1]  "It would be fatuous," DOJ argued, "to contend that Rule 6(e) relegates the need of a Presidential impeachment inquiry to a lower priority[.]"  DOJ *Haldeman* Br. at 20.

The D.C. Circuit has recently confirmed that *Haldeman* "fit[s] within the Rule 6 exception for 'judicial proceedings,'" again adopting DOJ's view.  *McKeever v. Barr*, 920 F.3d 842, 847 n.3 (D.C. Cir. 2019), *petition for cert. filed*, No. 19-307 (U.S. Sept. 5, 2019).[2]  Having

---

[1] Mem. for the United States at 20, *Haldeman*, 501 F.2d 714 (No. 74-1364) (DOJ *Haldeman* Br.) (collecting cases), https://perma.cc/9TDD-JV9T (click "View the live page"; p. 42); *see* DOJ's Resp. to App. at 14 n.8 (Sept. 13, 2019), Dkt. 20 (Opp.) (collecting cases).

[2] *See* Br. for Appellee at 37, *McKeever*, 920 F.3d 842 (No. 17-5149), 2018 WL 2684575 (DOJ *McKeever* Br.) ("[The D.C. Circuit] has treated *Haldeman* as standing only for the proposition that an impeachment proceeding may qualify as a 'judicial proceeding' for purposes of Rule 6(e)[.]").

persuaded the D.C. Circuit to confirm that interpretation of *Haldeman* in *McKeever*, DOJ cannot

succeed in reversing course here.  But in any event, DOJ's newly minted position does not

withstand scrutiny.  It finds no basis in law, and no court has ever adopted it.

This Court should likewise reject DOJ's attempt to claim for itself the power to declare

when an impeachment inquiry is underway in the House.  Under the Constitution's separation of

powers, and the authority the Constitution vests in the House alone to structure its proceedings,

that power is not DOJ's for the taking.  As Speaker Pelosi recently confirmed, the House is

"moving forward with an official impeachment inquiry."[3]  And the Committee has made plain

that the primary purpose of the disclosure it seeks is to aid that inquiry.

DOJ's claim that the Committee's need for disclosure is not particularized disregards

fundamental aspects of the Committee's request.  DOJ ignores the critical importance of gaining

a full understanding of the events described in Volume I of the Mueller Report—events that the

President may have been motivated to cover up when he engaged in the misconduct described in

Volume II.[4]  Those events may also be relevant to the House's investigation of the President's

solicitation of Ukrainian interference in the 2020 election.  In addition, DOJ underplays the Rule

6(e) redactions and underlying grand jury material that the Committee highlighted in Volume II,

which the Committee has grounds to believe may show that the President provided false

statements in his written answers to the Special Counsel's office.  Finally, DOJ elides that even

as it implores the Committee to seek evidence from sources other than the grand jury, the Trump

Administration has engaged in unprecedented stonewalling, preventing the Committee from

doing just that.

---

[3] *Pelosi Remarks* (Sept. 24, 2019), https://perma.cc/6EQM-34PT (Pelosi Tr.).
[4] Robert S. Mueller III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election* (2019) (Mueller Report), https://perma.cc/DN3N-9UW8.

The Committee respects the importance of grand jury secrecy.  At the same time, it is difficult to overstate the gravity of an impeachment inquiry.  Disclosure can accommodate both.

## ARGUMENT

### I.       Rule 6(e)'s Exception for Judicial Proceedings Encompasses Impeachments

The Rule 6(e) exception permitting disclosure "preliminarily to … a judicial proceeding" authorizes courts to disclose grand jury materials for Congressional impeachments.  Fed. R. Crim. P. 6(e)(3)(E)(i); *see* App. of the Comm. at 26-29 (July 26, 2019), Dkt. 1 (App.).  DOJ's contrary claim is foreclosed by D.C. Circuit precedent, *see McKeever*, 920 F.3d at 847 n.3 (interpreting *Haldeman*)—a result that DOJ now resists but itself recently sought, *see* DOJ *McKeever* Br. at 36-37 (interpreting *Haldeman*).  Ignoring its prior position, DOJ misinterprets *Haldeman* and *McKeever*.  Opp. 19-24.  DOJ's arguments fail to grapple with the Constitutional text and with Supreme Court precedent, and they misread Rule 6(e).  Opp. 13-19.  DOJ's novel view, if accepted, would mean that the Watergate grand jury's report was unlawfully transmitted to the Committee, and that many other disclosures of grand jury materials during impeachment investigations were also unlawful.  This Court should reject such an extreme revision of the law.

### A.       DOJ's New Interpretation of Rule 6(e) Conflicts with D.C. Circuit Precedent and Contradicts DOJ's Own Past Positions

**1.**  DOJ errs in contesting *Haldeman*'s holding that Rule 6(e)'s exception for judicial proceedings permits disclosure to the House as part of an impeachment inquiry.  Opp. 20-21.  In *Haldeman*, the en banc D.C. Circuit rejected the argument "that the discretion ordinarily reposed in a trial court to make such disclosure of grand jury proceedings as he deems in the public interest is, by the terms of Rule 6(e) of the Federal Rules of Criminal Procedure, limited to circumstances incidental to judicial proceedings *and that impeachment does not fall into that category*."  501 F.2d at 715 (emphasis added).  As the Court explained, "Judge Sirica has dealt at

length with this contention … .  We are in general agreement with his handling of these matters, and we feel no necessity to expand his discussion." *Id.*; *see In re Report & Rec. of June 5, 1972 Grand Jury*, 370 F. Supp. 1219, 1227-30 (D.D.C. 1974) (Sirica, J.).

Contrary to DOJ's claim, the force of the *Haldeman* ruling is not diminished because that case was decided on mandamus.  Appellate courts frequently decide important issues on mandamus and thereafter cite those decisions as precedent.[5]  Regardless, in *Haldeman*, while the "remedy of mandamus against the district court" might indeed have been "drastic," Opp. 21, surely it would have been called for had the district court unlawfully pierced "[g]rand jury secrecy"—"as important for the protection of the innocent as for the pursuit of the guilty." *United States v. Sells Eng'g*, 463 U.S. 418, 424 (1983) (quotation marks omitted).  Yet the D.C. Circuit declined to issue the writ, stating that Judge Sirica was "within the legal limits of his authority" in permitting disclosure.  *Haldeman*, 501 F.2d at 716.

During the impeachment of President Clinton, in *In re Madison*, the D.C. Circuit once again authorized disclosure of grand jury material to the House under Rule 6(e)'s exception for judicial proceedings, as this Court and DOJ have previously acknowledged.[6]  The Independent Counsel Act required the Independent Counsel to disclose to the House "any substantial and credible information … that may constitute grounds for an impeachment."  28 U.S.C. § 595(c).

---

[5] *See, e.g.*, *PHH Corp. v. CFPB*, 881 F.3d 75, 107 (D.C. Cir. 2018) (en banc) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) (Marshall, C.J.) (denying mandamus)); *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 168 (D.C. Cir. 2017) (citing *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) (Kavanaugh, J.) (granting mandamus)); *In re Sealed Case*, 494 F.3d 139, 142-44 (D.C. Cir. 2007) (citing *In re United States*, 872 F.2d 472, 474-75 (D.C. Cir. 1989) (denying mandamus)).

[6] Order, *In re Madison Guar. Sav. & Loan Ass'n*, No. 94-1 (D.C. Cir. Spec. Div. July 7, 1998) (per curiam) (*In re Madison* Order) (attached as Ex. Q to Decl. of Perry H. Apelbaum (July 26, 2019) (Apelbaum Decl.), Dkt. 1-1); *see In re App. to Unseal*, 308 F. Supp. 3d 314, 318 & n.4 (D.D.C. 2018), *appeal pending*, No. 18-5142 (D.C. Cir.); DOJ *McKeever* Br. at 37.

Independent Counsel Starr filed a motion to include grand jury materials with his disclosure. *In re App.*, 308 F. Supp. 3d at 318 n.4. In granting the motion, the D.C. Circuit "predicated the disclosure authorization" on Rule 6(e)'s exception for judicial proceedings. *Id.*

DOJ attempts to distinguish cases involving Independent Counsels, suggesting that the Independent Counsel Act itself "authorize[d] the provision of grand jury information for a potential impeachment." Opp. 22-23. But that is not how the D.C. Circuit or the Independent Counsel understood the Act to work in *In re Madison*. Nor is DOJ's current claim consistent with how this Court, at DOJ's urging, has described the D.C. Circuit's *In re Madison* Order.[7]

**2.** The D.C. Circuit recently eliminated any doubt about *Haldeman*'s meaning, interpreting it "as fitting within the Rule 6 exception for judicial proceedings" and thereby foreclosing DOJ's argument to the contrary here. *McKeever*, 920 F.3d at 847 n.3.

DOJ argues that *McKeever*'s interpretation of *Haldeman* is not a holding. Opp. 19-20. To the contrary, that interpretation was necessary to the decision. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) (a "necessary antecedent to" a decision is "not dictum"). In *McKeever*, the D.C. Circuit held that district courts lack inherent authority to disclose grand jury materials outside Rule 6(e)'s exceptions. 920 F.3d at 844. The *McKeever* panel could not have held that courts lack such authority if *Haldeman* had permitted disclosure on the basis of it. *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) (a three-judge panel cannot overrule a prior decision). And so the *McKeever* panel, in concluding that district courts have "no authority outside Rule 6(e) to disclose grand jury matter," 920 F.3d at

---

[7] *See In re App.*, 308 F. Supp. 3d at 318 & n.4; DOJ Resp. to CNN's Pet. to Unseal at 5 & n.3, *In re App.*, 308 F. Supp. 3d 314 (No. 18-mc-19), Dkt. 20 (*In re Madison* Order authorized disclosure "under Fed. R. Crim. P. 6(e)(3)([E])(i)").

850, necessarily confirmed that *Haldeman* permitted disclosure not on the basis of inherent

authority, but instead under "the Rule 6 exception for 'judicial proceedings,'" *id.* at 847 n.3.

DOJ is estopped from arguing to the contrary:  *Haldeman*'s proper interpretation was not

only "presented to and decided by" the *McKeever* Court, Opp. 21 (quoting Bryan A. Garner et

al., *The Law of Judicial Precedent* 44-45 (2016))—it was urged to the Court by DOJ itself.  In

arguing that courts lack inherent authority to disclose grand jury materials in *McKeever*, 920

F.3d at 843, DOJ necessarily had to argue that *Haldeman* had not relied on such authority, *see*

DOJ *McKeever* Br. at 36-37.  After first asserting that *Haldeman* "did not state the basis" upon

which it relied to permit disclosure, *id.* at 36, DOJ stated:  "But this Court has subsequently

treated *Haldeman* as standing only for the proposition that an impeachment proceeding may

qualify as a 'judicial proceeding' for purposes of Rule 6(e)."  *Id.* at 37 (collecting cases,

including *In re Madison* Order).  The D.C. Circuit agreed, interpreting *Haldeman* precisely as

DOJ had argued.  *McKeever*, 920 F.3d at 847 n.3.

DOJ now claims that *Haldeman* did not decide whether Rule 6(e)'s judicial proceedings

exception includes impeachments, Opp. 21-22, with no explanation or acknowledgment of the

contrary view that it persuaded the D.C. Circuit to adopt in *McKeever*.[8]  DOJ cannot have it both

ways.  "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in

---

[8] It appears that DOJ first expressed reservations about whether *Haldeman* was decided under Rule 6(e)'s judicial proceedings exception in opposing rehearing en banc in *McKeever*. Having convinced the *McKeever* panel to adopt its view, DOJ then hedged, arguing that the disclosure in *Haldeman* "could have rested on at least two grounds," either the court's inherent authority or because, as the "government also contended" in that case, "the disclosure fell within the text of Rule 6(e)'s 'judicial proceeding' exception."  DOJ's Resp. to Pet. for Reh'g En Banc at 12-13, *McKeever*, 920 F.2d 842 (No. 17-5149) (DOJ *McKeever* En Banc Resp. Br.).  The D.C. Circuit denied rehearing en banc, leaving the panel opinion, including its interpretation of *Haldeman*, as binding precedent.  Order, *McKeever*, No. 17-5149 (D.C. Cir. July 22, 2019).

maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]'" *Temple Univ. Hosp. v. NLRB*, 929 F.3d 729, 733 (D.C. Cir. 2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (judicial estoppel "protects the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment" (quotation marks omitted)).[9]

**3.**  In addition to being foreclosed, DOJ's argument conflicts with the "traditional rule of grand jury secrecy," and the "exceptions" thereto, that Rule 6(e) "codifies." *Sells Eng'g*, 463 U.S. at 424.  Just as "the secrecy of grand jury proceedings … safeguards vital interests," the Rule's exceptions are "the product of a carefully considered policy judgment by the Supreme Court in its rulemaking capacity, and by … Congress." *McKeever*, 920 F.3d at 844-45.  DOJ's cramped reading of Rule 6(e)'s judicial proceedings exception to exclude impeachments upsets that policy judgment and conflicts with courts' and DOJ's own longstanding interpretation. *See* Br. of Const. Acc. Ctr. as Amicus Curiae at 5-17 (Aug. 30, 2019), Dkt. 16-1 (CAC Br.).

DOJ's position is unprecedented.  As far as counsel is aware, the Executive Branch has never before objected to the disclosure of grand jury material to the House for an impeachment inquiry.  In *Haldeman*, when the grand jury sought to transmit materials to the Committee,

---

[9] *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011) ("hold[ing] that judicial estoppel bars the government from arguing" a position clearly inconsistent with its previous position).  As another judge of this Court explained in applying judicial estoppel against the United States, the doctrine "applies equally against the government as a litigant unless the government can show that 'estoppel would compromise a governmental interest in enforcing the law,' 'the shift in the government's position is the result of a change in public policy,' or 'the result of a change in facts essential to the prior judgment.'" *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 73 (D.D.C. 2008) (quoting *New Hampshire*, 532 U.S. at 755-56).  DOJ cannot make that showing here.  Among other reasons to apply judicial estoppel, having failed to even acknowledge its change in position, DOJ has no basis to assert a shift in policy rather than a shift in litigation strategy.

President Nixon did not object, 501 F.2d at 715, and DOJ's Special Prosecutor argued for disclosure, including pursuant to Rule 6(e)'s judicial proceedings exception, *see id.* at 717 (MacKinnon, J., concurring in part and dissenting in part); DOJ *Haldeman* Br. at 20-21.  DOJ has repeatedly (and recently) emphasized this fact.[10]  And when the Committee sought grand jury materials for its impeachment investigations of Judges Hastings and Porteous, DOJ did not object.[11]  In none of these cases did DOJ argue, as it does here—seemingly, for the first time[12]— that Rule 6(e)'s exception for judicial proceedings excludes impeachments.

DOJ urges this Court to ignore decisions stemming from the Hastings impeachment. Opp. 23-24 (citing *In re Grand Jury Proceedings*, 669 F. Supp. 1072, *aff'd*, *In re Request*, 833 F.2d 1438); *see* App. 28-29, 32-33, 40; CAC Br. at 15-16, 19.  But DOJ misinterprets the district court's decision and misapprehends the significance of the Eleventh Circuit's affirmance on appeal.  The district court held that "each of … three grounds pressed by the Committee for disclosure justifies its request for the grand jury record," the second of which the court succinctly stated as follows:  "There can be little doubt that an impeachment trial by the Senate is a 'judicial proceeding' in every significant sense and that a House investigation preliminary to

---

[10] *See, e.g.*, DOJ *McKeever* En Banc Resp. Br. at 12-13 (In *Haldeman*, in addition to appealing to courts' inherent authority, "the government also contended that the disclosure fell within the text of Rule 6(e)'s 'judicial proceeding' exception, and the only member of the *Haldeman* court to explain his reasoning relied on that argument in voting to deny the petition." (citing 501 F.2d at 717)); *accord* DOJ's Opp'n at 19, *In re Pet. of McKeever*, No. 13-mc-54 (D.D.C. June 3, 2013), Dkt. 10; DOJ's Opp'n at 20-21, *In re Pet. of Kutler*, No. 10-mc-547 (D.D.C. Mar. 11, 2011), Dkt. 16.

[11] *See In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1441-42 (11th Cir. 1987), *aff'g In re Grand Jury Proceedings*, 669 F. Supp. 1072 (S.D. Fla. 1987) (Hastings); Order at 2, *In re Grand Jury Investigation*, No. 2:09-mc-4346 (E.D. La. Aug. 6, 2009), Dkt. 10, *aff'd*, *In re Grand Jury Proceeding*, No. 09-30737 (5th Cir. Nov. 12, 2009) (Porteous).

[12] Independent Counsel Starr's motion seeking to disclose grand jury materials to the House during the Clinton impeachment is sealed, *see In re App.*, 308 F. Supp. 3d at 318 n.4, but the D.C. Circuit noted no objection in granting the motion, *see In re Madison* Order.

impeachment is within the scope of the Rule." *In re Grand Jury Proceedings*, 669 F. Supp. at 1075-76.  This rationale, which the court explained at some length, *see id.*, was by no means a mere "suggest[ion] as an alternative ground," as DOJ asserts, Opp. 23.  To the contrary, as the Eleventh Circuit stated, it was what the district court "held."  *In re Request*, 833 F.2d at 1440; *see also id.* at 1446-47 (Guy, J., concurring in part and dissenting in part).  And the fact that the district court's Rule 6(e) holding was the sole rationale agreed upon by the parties on appeal, *id.* at 1440, does not call it into question, *see* Opp. 23-24, but rather underscores that it is correct.

DOJ's new argument is alarming, especially in light of *McKeever*.  Having convinced the D.C. Circuit that courts lack inherent authority to disclose grand jury materials, DOJ now seeks to prevent their transmission to the House "'in a proceeding of so great import as an impeachment investigation.'"  920 F.3d at 847 n.3 (quoting *In re Report*, 370 F. Supp. at 1230).  Under this view, the House would have been prohibited from reviewing the Watergate grand jury's report as it was considering impeachment of President Nixon.  That would "'seem[] incredible.'"  *Id.* (quoting *In re Report*, 370 F. Supp. at 1230).  As explained below, "Rule 6(e) cannot be said to mandate such a result."  *In re Report*, 370 F. Supp. at 1230.

### B.     DOJ's Restrictive Reading of Rule 6(e) Fails on Its Own Terms

Even if it were not foreclosed, DOJ's appeal to Rule 6(e)'s "plain meaning" would fail. Opp. 13.  An impeachment trial in the Senate is a "judicial proceeding" under the Rule.

**1.**  Although DOJ attempts to draw support from the Constitution, Opp. 15-16, the Constitution's text confirms that Senate impeachment proceedings are trials, complete with the possibility of judgment and conviction of the accused.  Article I provides that "[t]he Senate shall have the sole Power to try all Impeachments," and specifies that when the President is tried, "the Chief Justice shall preside."  U.S. Const. Art. I, § 3, cl. 6.  "Judgment in Cases of Impeachment shall not extend further" than removal and disqualification, "but the Party convicted" may be

subject to a criminal trial "according to Law." *Id.*, Art. I, § 3, cl. 7.  Senators, "[w]hen sitting for

th[e] Purpose" of judging impeachment trials, "shall be on Oath or Affirmation." *Id.*, Art. I, § 3,

cl. 6.  And Article III underscores that an impeachment trial is a type of "Trial of all Crimes."

*Id.*, Art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by

Jury[.]").[13]

DOJ dismisses this Constitutional text as merely providing "labels" for trials that DOJ

would rather call "Senate removal proceedings."  Opp. 17.  But the Supreme Court has long

recognized that under the separation of powers, "[t]he Senate … exercises the *judicial power* of

trying impeachments."  *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1880) (emphasis added); *see*

*id.* at 190 (finding "no reason to doubt" that Congress, in exercising its impeachment authority,

has "the right to compel the attendance of witnesses, and their answer to proper questions, in the

same manner and by the use of the same means that courts of justice can in like cases").  As the

*In re Grand Jury Proceedings* court held in authorizing disclosure under Rule 6(e) during the

Hastings impeachment, "[i]t is apparent from the text of the Constitution that the framers

considered impeachment to be judicial in nature."  669 F. Supp. at 1076.

DOJ's argument that an impeachment trial in the Senate cannot be "judicial" because it is

"political," Opp. 16-17, contradicts the Supreme Court's and the Framers' understanding of

impeachment.  The fact that the Senate, by Constitutional design, "retain[s] plenary authority"

---

[13] DOJ contends that the Chief Justice's role as Presiding Officer in an impeachment trial of the President "is purely administrative."  Opp. 16.  In support, DOJ cites the Senate's rules for impeachment trials, but they make clear that the Presiding Officer has a significant role in shaping the trial, including "power to make and issue … all orders, mandates, writs, and precepts authorized by these rules or by the Senate" and to "rule on all questions of evidence … which ruling shall stand as the judgment of the Senate" unless a Member, or the Presiding Officer "at his option, in the first instance," submits the question for a formal Senate vote.  Rules of Procedure and Practice in the Senate When Sitting on Impeachment Trials, Rules V, VII, S. Doc. No. 104-1, at 178 (1995) (Senate Impeachment Rules), https://perma.cc/2E5A-X4VC.

over the impeachment trial, Opp. 16, does not change the proceeding's nature and purpose, which is to receive and weigh evidence, determine whether to convict, and impose punishment, *i.e.*, "to judge." *Nixon v. United States*, 506 U.S. 224, 236 (1993) ("[T]he whole of the impeachment power is divided between the two legislative bodies, with the House given the right to accuse and the Senate given the right to judge."); *see, e.g.*, *The Federalist* No. 66 (Alexander Hamilton) (defending the Framers' choice of the Senate—which is "assign[ed] … the right of judging"—as the "court of impeachments"). Accordingly, the Senate Impeachment Rules structure the trial with all the relevant hallmarks of a court proceeding:  a charging document, a writ of summons, an attorney for the accused, a Presiding Officer (as relevant here, the Chief Justice), opening and closing statements, the presentation and cross-examination of witnesses, and a determination on the evidence of whether to convict.[14] *See In re Grand Jury Investigation of Uranium Indus.*, No. 78-cv-173, 1979 WL 1661, at *7 (D.D.C. Aug. 16, 1979) (a Senate impeachment "trial presided over by the Chief Justice of the United States" is "very much a judicial proceeding"). Indeed, as Chief Justice Rehnquist noted in admonishing counsel not to refer to Senators as jurors during President Clinton's impeachment, "the Senate is not simply a jury; it is *a court in this case*." S. Doc. No. 106-4, Vol. II at 1142 (1999) (emphasis added).

**2.**  DOJ cites definitions of "judicial proceeding," "judicial power," and "judicial" to argue that an impeachment trial is not a judicial proceeding within the meaning of Rule 6(e). Opp. 13-14. But Black's Law Dictionary underscores that an impeachment trial is, in essence, a court proceeding. The first definition of "impeachment" explains that articles of impeachment, once approved by the House, "serve as the *charging instrument* for the later *trial* in the Senate";

---

[14] Senate Impeachment Rules II (presentation of articles of impeachment by House managers); VI, XVII (witness testimony); VII (evidentiary rulings); VIII (writ of summons to person impeached); X (attorney); XXII (opening and closing statements); XXIII (judgment).

that "[i]f the President is impeached, the *Chief Justice of the Supreme Court presides*"; and that as a result of impeachment the "*defendant* can be removed from office." *Impeachment*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Black's specifies that the Senate is a "court for the trial of impeachments," which is defined as "[a] tribunal empowered to try a government officer or other person brought before it by the process of impeachment." *Court for the Trial of Impeachments*, Black's Law Dictionary (11th ed. 2019).[15]

DOJ incorrectly contends that references to "judicial proceeding" in other provisions of Rule 6(e) support its narrow reading. Opp. 17-18. First, Rule 6(e)(3)(F) requires that the petitioner "serve the petition on," among others, "the parties to the judicial proceeding." Fed. R. Crim. P. 6(e)(3)(F). As discussed, when the judicial proceeding is a trial for the impeachment of the President, "the Party" is the President. U.S. Const. Art. I, § 3, cl. 7; *see* Cert. of Serv. (July 30, 2019), Dkt. 3. Second, Rule 6(e)(3)(G) provides that "*[if]* the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must [generally] transfer the petition to the other court." Fed. R. Crim. P. 6(e)(3)(G) (emphasis added). In adding this provision, the Advisory Committee "emphasize[d] that transfer is proper *only if* the proceeding giving rise to the petition 'is in federal district court in another district.'" Fed. R. Crim. P. 6(e)(3)(E) advisory comm. note to 1983 amend. (now codified as Rule 6(e)(3)(G)) (emphasis

---

[15] DOJ repeatedly quotes this Court's statement that "[c]onsideration by the House of Representatives, even in connection with a constitutionally sanctioned impeachment proceeding, falls outside the common understanding of 'a judicial proceeding.'" *In re App.*, 308 F. Supp. 3d at 318 n.4; *see* Opp. 14-15, 22. DOJ omits important context. Immediately preceding the statement DOJ quotes, this Court acknowledged that the D.C. Circuit's *In re Madison* Order authorizing disclosure of grand jury materials to Congress during the Clinton impeachment was "predicated" on the Rule 6(e) exception for judicial proceedings. *In re App.*, 308 F. Supp. 3d at 318 n.4. And immediately after, this Court quoted the Eleventh Circuit's observation that in "'impeachment proceedings before Congress … Congress becomes something like a court.'" *Id.* (quoting *In re Petition*, 735 F.2d 1261, 1271 (11th Cir. 1984)).

added).[16]  As an example, the Advisory Committee explained that transfer to state court would

not be encompassed by the Rule.  *Id.*  The fact that the petitioned court is authorized in some

cases to transfer the petition to another federal district court—but not to other courts—does not

mean that "judicial proceeding" should be interpreted to include only such federal district courts.

Finally, even if it were otherwise supported—which it is not—DOJ's interpretation of

Rule 6(e) should be avoided because it would hinder the "investigative authority of the Judiciary

Committee with respect to presidential conduct," which "has an express constitutional source."

*Senate Select Comm. on Pres. Campaign Activities v. Nixon*, 498 F.2d 725, 732 (D.C. Cir. 1974)

(citing U.S. Const. Art. I, § 2, cl. 5).

## II.     The Judiciary Committee's Investigation Is Preliminary to a Judicial Proceeding Within the Meaning of Rule 6(e)

The Constitution assigns the "sole Power of Impeachment" to the House, U.S. Const. Art.

I, § 2, cl. 5, and authorizes the House alone to "determine the Rules of its Proceedings," *id.*, Art.

I, § 5, cl. 2.  The Judiciary Committee is exercising the House's Article I powers and its own

authority over impeachments, *see, e.g.*, H. Res. 430 (2019); *Jefferson's Manual* § 605, H. Doc.

No. 114-192, at 321 (2017), to determine whether to recommend articles of impeachment against

the President.  *E.g.*, App. 30-34.  DOJ purports to characterize the Committee's "actions" as "at

most amount[ing] to an exploratory inquiry."  Opp. 24; *see* Opp. 26.  But that is not for the

Executive Branch to say.  As Speaker Pelosi has recently confirmed, the House and the

Committee are engaged in an "impeachment inquiry."  Pelosi Tr.

---

[16] DOJ contends that the retention of the term "judicial proceeding" in the 1983 amendments confirms impeachment proceedings are excluded because the "amendments post-dated *Haldeman*."  Opp. 18 n.12.  That is exactly backwards.  As principles of statutory interpretation make clear, because *Haldeman* interpreted judicial proceedings to include Senate impeachment trials, when Congress reenacted the same language in the Rule, it adopted the earlier judicial construction of that phrase.  *See Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 633-34 (2019).

**1.** The primary purpose of the Committee's request is to aid its impeachment inquiry. *See United States v. Baggot*, 463 U.S. 476, 480 (1983).  Chairman Nadler's July 11, 2019 memorandum, in addressing the Committee's investigation into "allegations of presidential misconduct described in the Mueller Report and other potential abuses of power," begins by describing "the Committee's responsibility to determine whether to recommend articles of impeachment."  Apelbaum Decl., Ex. A at 3.  The Chairman explained, quoting the Committee's earlier report, that the Committee "needs to review the unredacted [Mueller Report], the underlying evidence, and associated documents so that it can ascertain the facts and consider its next steps."  *Id.* (quoting H. Rep. No. 116-105, at 13 (2019)).  DOJ suggests that "next steps" reveals a relevant ambiguity in the Committee's purpose, *see* Opp. 26, but that phrase comes immediately after a sentence referencing the Committee's decision "whether to approve articles of impeachment," Apelbaum Decl., Ex. A at 2 (quoting H. Rep. No. 116-105, at 13).

The Committee has recently confirmed the nature of its inquiry, "[r]esolv[ing]" that the purpose of its "investigation" is "to determine whether to recommend articles of impeachment" against President Trump, and adopting Investigative Procedures governing the presentation of evidence related to impeachment.[17]  This is not "the sort of oversight that Congress routinely undertakes," Opp. 28:  this is an "impeachment inquiry."  Pelosi Tr. ("For the past several months, we have been investigating in our committees and litigating in the courts so the House can gather all of the relevant facts and consider whether to exercise its full Article I powers,

---

[17] Comm. on the Judiciary, Resolution for Investigative Procedures at 4 (Opp., Ex. 11); *see id.* at 1-4 (repeatedly referencing impeachment); *see also* Markup of Resolution for Investigative Procedures at 4-5, 116th Cong. (Sept. 12, 2019), https://perma.cc/UV3N-Q8DZ (statement of Chairman Nadler).  DOJ contends that House leadership previously characterized the Committee's investigation in different terms.  Opp. 26-27.  Even if any differences were once relevant, Speaker Pelosi's recent statement resolves any doubts.  *See* Pelosi Tr.

including a constitutional power of the utmost gravity, approval of Articles of Impeachment.").

The fact that the Committee is also considering whether the President's conduct merits a

legislative response, *see, e.g.*, Apelbaum Decl., Ex. A at 3-4, does not negate the fact that the

Committee is engaged in an impeachment inquiry, Opp. 26.  Congress amended and enacted a

number of laws in response to Watergate.[18]  The fact that legislation was passed does not mean

that the "primary purpose" of the Judiciary Committee's Watergate investigation was anything

other than "to assist in preparation" for impeachment.  *Baggot*, 463 U.S. at 480.

DOJ asserts that it is too early in the process for the Committee to request grand jury

material.  Opp. 28-29.  But the Committee's investigation comprises a critical part of the

evidence-gathering phase of the House's impeachment inquiry.  After the Committee concludes

its investigation, it may refer articles of impeachment to the House for a vote.  DOJ's suggestion

that grand jury materials can only be disclosed to the House *after* a vote to impeach, *see* Opp. 29,

would deprive the House of evidence it needs to consider that very vote.

Finally, DOJ cites no authority for the proposition that the House must vote to authorize

the Committee to investigate impeachment.  *See* Opp. 28-29.  There is no such authority:  none

in the Constitution, which entrusts to the House the "sole Power of Impeachment," U.S. Const.

Art. I, § 2, cl. 5, and none in the House Rules, which the Constitution likewise empowers the

House alone to establish, *see id.*, Art. I, § 5, cl. 2.  "In the House various events have been

credited with setting an impeachment in motion[.]"  *Jefferson's Manual* § 603, H. Doc. No. 114-

---

[18] *See, e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997) (Internal Revenue Code provision restricting release of tax returns); *United States v. Rose*, 28 F.3d 181, 183 (D.C. Cir. 1994) (Ethics in Government Act of 1978).

192, at 319 (2017).[19]  Speaker Pelosi and the Committee have confirmed that an impeachment

inquiry is underway, and it is not for DOJ to say otherwise.  In any event, in authorizing the

Committee to "petition for disclosure of" grand jury material—*i.e.*, to initiate this action—the

House referenced Rule 6(e)'s judicial proceedings exception and "[r]esolved" that in pursuing

this case, the Committee "has any and all necessary authority under Article I of the

Constitution."  H. Res. 430, at 2-3 (2019); *see* H. Rep. No. 116-108, at 21 (2019); App. 22-23.

    **2.**  *Baggot* confirms that the Committee's request is preliminary to a judicial proceeding.

*See* 463 U.S. at 479-83.  DOJ's argument to the contrary, Opp. 24-25, 28-30, misreads that case.

    In *Baggot*, the Supreme Court held that disclosure was not permitted under Rule 6(e) in

connection with "an IRS audit of civil tax liability, because the purpose of the audit [was] not to

prepare for or conduct litigation" in a *judicial proceeding*, but rather was "to assess the amount

of tax liability through *administrative channels*."  463 U.S. at 480 (emphasis added).  The Court

---

[19] DOJ's appeal to history, Opp. 28, is unavailing.  *See* App. 31-34; *see also* CAC Br. at
19-20.  The impeachment of President Johnson predated, by more than 100 years, changes to the
House Rules authorizing standing committees to issue subpoenas, and to sit and act at any place
in the United States to conduct investigations.  *See, e.g., Jefferson's Manual* §§ 733, 805, H.
Doc. No. 114-192, at 479-80, 584 (2017).  In the case of President Nixon, the Committee had
been investigating charges of impeachment for several months before the House adopted the
resolution DOJ highlights, H. Res. 803, 93rd Cong. (1974), which also provided the Committee
with authorities it did not then have under existing rules.  *See* III Deschler's Precedents, ch. 14,
§ 15.2; H. Rep. No. 93-641, at 2 (1973).  The House resolution in relation to the impeachment of
President Clinton likewise provided the Committee with investigative authorities it then lacked.
*See* H. Res. 851, 105th Cong. (1998).  The House's adoption of those resolutions in the past
provides no support for the claim that such a resolution is necessary today.  It is not.  During the
impeachments of Judges Nixon, Hastings, and Claiborne, for example, no resolution explicitly
authorizing an impeachment investigation by the Committee was proposed or agreed to in the
House.  *Cf.* H. Rep. No. 101-36, at 13-16 (1989) (Nixon); H. Rep. No. 100-810, at 9-10 (1988)
(Hastings); H. Rep. No. 99-688, at 3-7 (1986) (Claiborne).  In addressing the Hastings
impeachment in its opening brief, the Committee stated that relevant House resolutions did not
"mention[]" impeachment.  App. 32 n.47.  Regrettably, that was incorrect.  Although the
resolutions mentioned impeachment in permitting the use of various funds and other powers for
an ongoing impeachment inquiry, they did not specifically authorize that inquiry.  Counsel
apologizes for the error.

explained that the "assessment of a tax deficiency by the IRS" is "extrajudicial" in that it is "largely self-executing," does not "requir[e] prior validation or enforcement by a court," and indeed only ends up in court if the taxpayer so "chooses." *Id.* at 481. The "self-executing" nature of the tax assessment, *id.*, is critical context for *Baggot*'s holding that, under Rule 6(e), the "primary purpose of disclosure" must be "to assist in preparation or conduct of a judicial proceeding," *id.* at 480. As the Court explained, "[w]here an agency's action does not require resort to litigation to accomplish the agency's present goal, the action is not preliminary to a judicial proceeding." *Id.* at 482.

An impeachment inquiry in the House is not "self-executing" like a tax assessment, *id.* at 481, but rather is "related fairly directly to" "anticipated," "identifiable litigation," *id.* at 480, *i.e.*, an impeachment trial in the Senate. And materials from House impeachment inquiries become available as evidence in Senate impeachment trials. *See id.* ("The focus is on the *actual use* to be made of the material."); *see, e.g.*, S. Doc. No. 106-4, Vol. I at vi (1999) (admitting into evidence materials submitted by the Committee at the commencement of Clinton impeachment trial).

*Baggot* provides no support for DOJ's suggestion that an impeachment inquiry by a House committee can never "be conducted 'preliminary' to a Senate impeachment proceeding because the Committee does not have the authority to precipitate a Senate impeachment proceeding." Opp. 25. *Baggot* explicitly disclaimed "hold[ing] that the Government … may never obtain [Rule 6(e)(3)(E)(i)] disclosure of grand jury materials any time the initiative for litigating lies elsewhere." 463 U.S. at 482-83. Nor did *Baggot* import exacting timing and proximity requirements into Rule 6(e)(3)(E)(i), as DOJ suggests, or "h[o]ld that the presence of intervening contingencies suffices to prevent [an investigation] … from actually proving 'preliminary' to a judicial proceeding," as DOJ argues. Opp. 28-29; *see* Opp. 25. If any

intervening contingency suffices, then a grand jury investigation could never be preliminary to a criminal trial under the Rule, given the intervening contingency of an indictment. But that is not the law. *See In re Grand Jury*, 490 F.3d 978, 986 (D.C. Cir. 2007).

Tellingly, DOJ cites no case that supports its reading of *Baggot*. Nor has DOJ identified authority indicating that *Baggot* undermines *Haldeman*. Opp. 25-26 n.15. Rather, as the district court in the Hastings case concluded—in keeping with *Haldeman* and four years after *Baggot* was decided—"a House investigation preliminary to impeachment is within the scope of the Rule." *In re Grand Jury Proceedings*, 669 F. Supp. at 1076.

### III.   The Judiciary Committee Has Demonstrated a Particularized and Pressing Need

During Watergate, Judge Sirica described "an impeachment investigation involving the President of the United States" as "a matter of the most critical moment to the Nation," noting that "[i]t would be difficult to conceive of a more compelling need than that of this country for an unswervingly fair inquiry based on all the pertinent information." *In re Report*, 370 F. Supp. at 1230. Now, as part of the House's impeachment inquiry, just as much as then, "all the pertinent information" includes grand jury materials. *Id.* The Committee has a particularized need for disclosure. *See Douglas Oil v. Petrol Stops Nw.*, 441 U.S. 211, 217 (1979).

**1.** The *Douglas Oil* standard requires "a strong showing," *Sells Eng'g*, 463 U.S. at 443, but it is not insurmountable, as DOJ would have it. In fact, three factors point in the opposite direction. First, to the extent that the grand jury "has ended its activities" by the time of any disclosure to the Committee, "the interests in grand jury secrecy," while "not eliminated," may be "reduced." *Douglas Oil*, 441 U.S. at 222 & n.13; *see, e.g.*, *In re Request*, 833 F.2d at 1441.

Second, "the interests that underlie the policy of grand jury secrecy are affected to a lesser extent when disclosure to a governmental body is requested." *In re Request*, 833 F.2d at 1441 (Committee is a "government movant" under Rule 6(e)); *see Sells Eng'g*, 463 U.S. at 445.

Members of Congress and congressional staff take an oath to support and defend the Constitution and to faithfully discharge the duties of their offices.  *See* 2 U.S.C. § 25; 5 U.S.C. § 3331.  In addition, the Committee has adopted Grand Jury Handling Procedures to protect the confidentiality of disclosed materials.  *See* App. 24-25.[20]  Therefore, just as with disclosure to "Justice Department attorneys," here there is "less risk of further leakage or improper use than" if disclosure were "to private parties or the general public."  *Sells Eng'g*, 463 U.S. at 445.

Third, "under the particularized need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body."  *Id.* (quotation marks omitted).  The Committee seeks grand jury material to aid it in determining, pursuant to its Article I authority, whether to recommend articles of impeachment against the President.  "Public confidence in a procedure as political and public as impeachment is an important consideration justifying disclosure."  *In re Request*, 833 F.2d at 1445.  DOJ does not advance its argument by mischaracterizing the Committee's request as a "mere desire to know what lies behind [the Mueller Report's] redactions," or by wrongly diminishing the Committee's investigation as a "fishing expedition."  Opp. 32 (quotation marks omitted).

**2.**  At this moment, the House alone can hold the President accountable for the conduct described in the Mueller Report and other potentially impeachable offenses.  *See, e.g.*, Mueller Report, Vol. II at 1.  Disclosure "is needed to avoid a possible injustice."  *Douglas Oil*, 441 U.S. at 222.  Despite having no access to the redacted materials themselves, the Committee has

---

[20] DOJ describes the Committee's Procedures as "entirely illusory."  Opp. 36.  Yet among other things, they require grand jury information to be maintained securely, prohibit copying it, regulate note-taking, and specify that it be presented to the Committee in executive session only.  Apelbaum Decl., Ex. X ¶¶ 2-3, 7-9.

provided *every* "reason to believe" that material "useful to [its] investigation into the President lies under" the Mueller Report's 6(e) redactions, Opp. 31, in both Volumes I and II.

DOJ is wrong to argue—and apparently to assume, in its *ex parte* submission, *see* Opp., Ex. 10—that the Committee has no need for materials in Volume I of the Mueller Report because it is Volume II that addresses the President's obstruction of justice.  Opp. 31-34 & n.19. Whether the President acted with corrupt intent when he attempted to obstruct the FBI's and the Special Counsel's investigations is highly relevant to the Committee's impeachment inquiry. Accordingly, the Committee must investigate whether there were events that occurred during the campaign—including any "contacts with agents for the Russian government" and "President Trump's knowledge of those contacts"—that the President might have wanted to conceal.  App. 34.  Because Volume I addresses those matters, including the June 9, 2016 meeting at Trump Tower and whether George Papadopoulos told other members of the campaign about Russia having "dirt" on Hillary Clinton, for example, the Committee needs Volume I grand jury materials.  *See* App. 4-5, 21, 34-36.[21]

Moreover, certain Rule 6(e) redactions in Volume I clearly relate to Paul Manafort's grand jury testimony, *see, e.g.*, Mueller Report, Vol. I at 137 & n.896, 140 & nn.927 & 932, 143 & nn.953, 954, 955, including about Manafort's discussions with an associate in February 2017 about "a criminal investigation into so-called 'black ledger' payments to Manafort that was being conducted by Ukraine's National Anti-Corruption Bureau," *id.*, Vol. I at 143 & n.958.  Such

---

[21] DOJ questions the Committee's need for any grand jury materials concerning former White House Counsel Donald McGahn, emphasizing that "*none* of the discussion involving Mr. McGahn in Volume II of the Report reflects *any* redactions for grand jury information."  Opp. 31-32.  DOJ makes no representation about Volume I redactions, however, and does not contest that McGahn may have knowledge about the events described therein, particularly given his former role as counsel to the Trump Campaign.

grand jury evidence—which the Judiciary Committee's procedures permit sharing with the House Permanent Select Committee on Intelligence (HPSCI), *see* App. 25—would further HPSCI's own investigation of the President's efforts to press the government of Ukraine to investigate, among other things, "Ukrainians who provided key evidence against … Paul Manafort" to assist the President's 2020 re-election bid.[22]

The Committee has also demonstrated particularized need with respect to the grand jury materials in Volume II, which DOJ does not seriously contest, other than to incorrectly assert that the Committee has cited no "examples … of supposedly relevant, redacted information" from that Volume. Opp. 31. To the contrary, among other Volume II redactions the Committee identified, *see* App. 36-37, the Committee highlighted redacted text that is cited in reference to Manafort having "recalled that Trump" seemingly asked to be kept "updated" about WikiLeaks's plans, Mueller Report, Vol. II at 18 & n.27 (footnote contains 6(e) redactions), and Manafort's deputy having indicated that Trump had some knowledge of those plans, *id.*, Vol. II at 18. The text redacted under Rule 6(e) and any underlying evidence to which it may point are critical to the Committee's investigation. Not only could those materials demonstrate the President's motives for obstructing the Special Counsel's investigation, they also could reveal that Trump was aware of his campaign's contacts with WikiLeaks.[23] Those materials therefore have direct

---

[22] Letter from HPSCI Chairman Schiff to Pat Cipollone, White House Counsel 1 (Sept. 9, 2019), https://perma.cc/RW5U-4JRE; *see* Pelosi Tr. ("directing … six Committees," including HPSCI, "to proceed with their investigations under that umbrella of impeachment inquiry").

[23] The President's personal attorney, Michael Cohen, testified to Congress in February that "Trump knew from [campaign advisor] Roger Stone in advance about the WikiLeaks drop of emails." Testimony of Michael D. Cohen before the H. Comm. on Oversight and Reform at 10 (Feb. 27, 2019), https://perma.cc/FU76-7U69. And the indictment against Stone likewise alleges that the Trump Campaign asked Stone about future WikiLeaks releases and that Stone "told the Trump Campaign about potential future releases of damaging material" by WikiLeaks. Indictment ¶¶ 5, 12, *United States v. Stone*, No. 19-cr-18 (D.D.C. Jan. 24, 2019).

bearing on whether the President was untruthful, and further obstructed the Special Counsel's investigation, when in providing written responses to the Special Counsel's questions he denied being aware of any communications between his campaign and WikiLeaks.  Mueller Report, App. C-18, C-19; *see* App. 36.

**3.**  DOJ argues that the Committee already has access to, or has other ways of seeking, all of the material that it needs for purposes of its impeachment investigation.  Opp. 31-32.  That argument fails for at least four reasons.  First, accepting DOJ's suggestion that the Committee should confine itself to the non-redacted portions of the Mueller Report would "violate separation of powers principles."  *In re Request*, 833 F.2d at 1445 (during the Hastings impeachment, rejecting the argument that "the Committee must rely on the report and record forwarded to it by the Judicial Conference unless it can show that the report and record are insufficient" in light of "the investigatory power of the House in impeachment proceedings").

Second, DOJ overstates what it has already provided to the Committee.  Opp. 32.  DOJ has disclosed only a fraction of the FBI-302 reports documenting interviews with critical witnesses that the Committee has requested, *see* Apelbaum Decl., Ex. O at 5-6 (Committee requests), and, in particular, has not turned over any of the five reports documenting interviews with McGahn, *cf.* Opp. 32 (citing McGahn reports).  Of the reports that DOJ has disclosed, many are heavily redacted, with no explanation.  *Cf.* Opp. 32 (claiming "appropriate[] redact[ions]").

Third, the fact that HPSCI has previously conducted some investigations of some of the matters of interest to the Judiciary Committee, Opp. 33-34, is irrelevant.  As the HPSCI Minority noted at the time, because the HPSCI Majority did not arrange for Paul Manafort's testimony, HPSCI "has an incomplete record about Manafort's communications prior to, during, and after

his tenure on the" Trump Campaign, including those relating to Manafort's work in Ukraine.[24]

Regardless, by the time *Haldeman* was decided, the Senate Select Committee on Presidential

Campaign Activities had already engaged in a substantial investigation and had heard testimony

from dozens of witnesses, *see* S. Rep. No. 93-981, at xxix (1974), but the D.C. Circuit did not

see that as a reason to deny the House access to grand jury materials.  Nor should this Court view

HPSCI's prior investigation as undercutting the justification for disclosure here.

Fourth, DOJ cannot plausibly claim that the Committee should instead use "its available

discovery tools," including its subpoena power, Opp. 33, even as the Trump Administration

resists those powers just as vigorously as it objects to disclosure here.  As President Trump has

stated, the Executive Branch is "fighting all the subpoenas."[25]

**4.**  The Committee's "need for disclosure is greater than the need for continued secrecy."

*Douglas Oil*, 441 U.S. at 222.  As the Eleventh Circuit held in the Hastings case, "taking into

account the doctrine of separation of powers, a merely generalized assertion of secrecy

in grand jury materials must yield to a demonstrated, specific need for evidence in a

pending impeachment investigation."  *In re Request*, 833 F.2d at 1444.  Here, while DOJ cites "a

number of ongoing and pending criminal and national security matters that arose as part of the

---

[24] HPSCI Minority Views at 52 (Mar. 26, 2018), https://perma.cc/ZVB3-GCMV; *see id.* at 9 (describing many additional witnesses not called before HPSCI).

[25] *Remarks by President Trump Before Marine One Departure*, White House (Apr. 24, 2019), https://perma.cc/W7VZ-FZ3T (referring to Congressional subpoenas); *see* App. 16-20; *see, e.g.*, H. Rep. No. 116-108, at 3-18 (summarizing resistance to Congressional inquiries); H. Rep. No. 116-105, at 5-12 (summarizing resistance to the Committee's investigation); Compl., *Comm. on the Judiciary v. McGahn*, No. 19-cv-2379 (D.D.C. Aug. 7, 2019) (action to enforce the Committee's subpoena for testimony by McGahn); Press Release, Comm. on the Judiciary, Nadler Statement on White House Obstruction of Dearborn, Porter & Lewandowski Testimony (Sept. 16, 2019), https://perma.cc/BV8E-KDKN (detailing Executive Branch directives purporting to prevent or limit testimony by two former Executive Branch officials and President Trump's former campaign manager).

Special Counsel's investigation," Opp. 36, DOJ does not state directly that those matters are in fact implicated by the disclosures the Committee seeks, *see* Opp. 36-37. DOJ undoubtedly has a valid interest in protecting those matters, but its response is more of a "generalized assertion" than an "articulat[ion]" of a "*specific* interest in secrecy in" the materials the Committee seeks. *In re Request*, 833 F.2d at 1444 (emphasis added). And as DOJ elsewhere takes pains to point out, *e.g.*, Opp. 1, 6, it has already provided the Committee and HPSCI access to materials that were redacted in the public version of the Mueller Report as potentially harmful to ongoing matters, *see* App. 19-20. In addition, at least to the Committee's knowledge, many if not most matters involving former campaign officials or associates of President Trump are concluded or are near completion. *Cf. In re Report*, 370 F. Supp. at 1230 (permitting disclosure notwithstanding upcoming trials of defendants implicated in the grand jury materials).

**5.** The Committee's request is "structured to cover only [the] material [it] need[s]." *Douglas Oil*, 441 U.S. at 222. DOJ asserts that "[r]equests for wholesale disclosure of grand jury transcripts generally do not satisfy" the *Douglas Oil* standard. Opp. 30. In the context of the Hastings impeachment, however, the Eleventh Circuit concluded that "the Committee's request for disclosure of the entire grand jury record [wa]s appropriate." *In re Request*, 833 F.2d at 1445. In any event, the Committee is not requesting the entire grand jury record. *See* App. 25.

DOJ does not appear to argue that the Committee's request for the grand jury materials beneath the Rule 6(e) redactions in the Mueller Report itself is overbroad, but rather questions only the Committee's additional requests for certain specified underlying materials. Opp. 37-38. That those would require DOJ to undertake the same kinds of discovery tasks that are routine in civil litigation is no valid objection. And the Committee's requests are far more tailored than, for

example, a "blanket request for *all* of the unused grand jury materials from a prosecution," to use an inapposite example DOJ cites.  Opp. 38 (quotation marks and brackets omitted).

The Committee respects the importance of the traditional rule of grand jury secrecy codified in Rule 6(e).  In light of that Rule, however, the Committee is at an informational disadvantage.  To be sure, as demonstrated above, the Committee's request falls squarely within Rule 6(e)'s parameters, and extraordinary circumstances—including the President's conduct, as described in the Mueller Report, and the Trump Administration's unprecedented efforts to obstruct the Committee's investigation—necessitate the Committee's request.  But just as the *Douglas Oil* standard is "highly flexible," "adaptable to different circumstances[,] and sensitive to the fact that the requirements of secrecy are greater in some situations than in others," *Sells Eng'g*, 463 U.S. at 445, the Committee's request is amenable to prioritization.  Among other options, the Court could direct a focused and staged disclosure, starting with the grand jury materials redacted from the Mueller Report itself.  Upon reviewing those, the Committee could then assess and, as necessary, re-articulate its need for specific underlying materials.  In addition, in consultation with DOJ, the Court could permit disclosure of only those materials that it is convinced can be reviewed by the Committee in the course of its investigation without jeopardizing ongoing matters.  The Court should exercise its "substantial discretion," *Douglas Oil*, 441 U.S. at 223, in favor of granting disclosure in a way that will accommodate the Committee's pressing need while protecting other valid concerns.

## CONCLUSION

The Committee respectfully requests that the Court disclose the grand jury materials it seeks in furtherance of the House's impeachment inquiry.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
    *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
    *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
    *Associate General Counsel*
Josephine Morse (D.C. Bar No. 1531317)
    *Associate General Counsel*
Adam A. Grogg (D.C. Bar No. 1552438)
    *Assistant General Counsel*
Jonathan B. Schwartz (D.C. Bar No. 342758)
    *Attorney*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for the Committee on the Judiciary, United States House of Representatives*

September 30, 2019

26