

**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General			*Washington, D.C. 20530*

June 12, 2019

The Honorable Adam Schiff  
Chairman  
Permanent Select Committee on Intelligence  
U.S. House of Representatives  
Washington, DC  20515

Dear Chairman Schiff:

    We write in response to your request for an explanation as to why the Department of Justice ("Department") believes that the national-security exception to Federal Rule of Criminal Procedure 6(e) does not authorize disclosing to the House Permanent Select Committee on Intelligence ("Committee") grand-jury information developed in connection with the investigation of Special Counsel Robert S. Mueller, III.

    The national-security exception, which is contained at Fed. R. Crim. P. 6(e)(3)(D), authorizes attorneys for the government, under defined circumstances, to share with specified officials grand-jury information that may bear on threats to our national security and other intelligence matters. We do not believe that this provision supports congressional access under these circumstances, and our conclusion is consistent with the courts' general approach to interpreting Rule 6(e), as well as with the Department's long-standing interpretation.

    The Supreme Court has long "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Congress has recognized this too, having enacted a rule of criminal procedure that prohibits the Department of Justice from disclosing any matter that occurs before a grand jury, subject to a few enumerated exceptions. *See* Fed. R. Crim. P. 6(e)(2). As the D.C. Circuit recently observed, "Federal Rule of Criminal Procedure 6(e) 'makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule' and 'sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed.'" *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) (internal citation omitted). The Supreme Court has emphasized that Rule 6(e)'s exceptions should be interpreted narrowly. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) ("In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of [grand-jury] secrecy has been authorized."); *see also Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly

enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

For decades, the Department has read Rule 6(e) to prohibit the disclosure of grand-jury materials to Congress in the oversight context. *See, e.g., Congressional Subpoenas of Department of Justice Investigative Files*, 8 Op. O.L.C. 252, 269 (1984). Consistent with that understanding, Congress at times has proposed to amend Rule 6(e) to provide for congressional access, but it has never expressly done so. *See Legislation Providing for Court-Ordered Disclosure of Grand Jury Materials to Congressional Committees*, 9 Op. O.L.C. 86 (1985). Your request raises the question whether Congress implicitly provided for congressional access by adopting the national-security exception contained in Rule 6(e)(3)(D). We do not see any basis, in the text or history of the provision, to support such a reading.

In the years after the September 11, 2001 attacks, Congress established an exception to grand-jury secrecy that allows the Department to share grand-jury information that may bear on threats to our national-security and other intelligence matters. First, in the USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 203(a)(1), 115 Stat. 272, 279, Congress authorized the disclosure of foreign intelligence and counterintelligence information to "any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties." Fed. R. Crim. P. 6(e)(3)(D) (as amended). Second, in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 6501(a), 118 Stat. 3638, 3760, Congress further authorized the sharing of grand-jury information involving "a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent." Fed. R. Crim. P. 6(e)(3)(D) (as amended). That information may be disclosed "to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities." *Id.* This exception was added in response to a recommendation by the 9/11 Commission that identified "the need for intelligence and law enforcement agencies to cooperate and share intelligence and law enforcement information." H. Rep. No. 108-724, pt. 5, at 175 (2004). This expansion of the national-security exception "was an effort to allow sharing of grand jury information in limited circumstances." *Id.* at 176.

We do not believe that either part of the national-security exception to Rule 6(e) authorizes the sharing with the Committee of grand-jury information bearing upon the Special Counsel's investigation. The two parts of the exception authorize disclosure to two different groups of individuals. The first part applies to disclosures of the specified information to "any federal law enforcement, intelligence, protective, immigration, national defense, or national security official." The text does not expressly identify Members of Congress, although Congress could very easily have included them had it intended to authorize access to Members in

The Honorable Adam Schiff
Page Three

connection with the performance of their "official duties." To the contrary, the enumerated categories all involve officials charged with significant executive responsibilities. As a class, Members of Congress would not be considered "federal law enforcement officials," "immigration officials," or the like. We similarly do not believe that particular Members of Congress become "intelligence officials" or "national defense officials" upon their assignment to committees with oversight responsibilities over those portions of the Executive Branch. As the Supreme Court has made clear, Rule 6(e)'s exceptions are to be narrowly construed, and we do not read Congress to have indirectly overturned Rule 6(e)'s preexisting limitation on the disclosure of grand-jury information to Members of Congress by enacting an exception for officials holding executive responsibilities.

The second part of the exception authorizes the sharing of information bearing upon specific kinds of ongoing "threat[s]" or "clandestine intelligence gathering activities" with any "appropriate" federal, state, local, tribal, or foreign government official, but only for "the purpose of preventing or responding to such threat or activities." The provision reaches individuals whose official duties permit them to "prevent[]" or "respond" to an ongoing "threat" or intelligence operation. It therefore extends to law-enforcement agencies and executive officials of various types, but it is not naturally construed as applying to a disclosure to a Member of Congress seeking information about historical events. While it could be said that Congress has authority to "respond" to an attack or other historical event, the disclosure provision's forward-looking and preventive nature is evident in its limitation to information about a "threat" of an attack, grave hostile act, or act of sabotage or terrorism; it does not expressly cover information about completed acts.

That conclusion is consistent with the national-security exception's notice provision, which requires Department attorneys to advise the relevant district court of any disclosure under the paragraph. The Department must advise the court of "the departments, agencies or entities to which the disclosure was made." Fed. R. Crim. P. 6(e)(3)(D)(ii). Congressional committees are plainly not "departments" or "agencies" for purposes of that notice provision. It seems equally implausible that Congress would describe its own Members or committees as "entities," and under the canon of *noscitur a sociis*, we would read "entity" to be similar in kind to the "departments" and "agencies" identified. Had Congress wished to overturn the Department's settled understanding of Rule 6(e), or had it wished otherwise to grant congressional committees access to grand-jury information, it would have spoken much more directly than it has done in Rule 6(e)(3)(D).

This analysis receives further support from the Supreme Court's interpretation of another Rule 6(e) exception in *Sells Engineering*. In that case, the Court gave a markedly narrow construction to the Rule 6(e)(3)(A)(i) exception authorizing the disclosure of certain grand-jury information to "attorney[s] for the government." Following the resolution of a criminal case, the Department had sought to share grand-jury information in connection with a False Claims Act suit, reasoning that the Department's civil-enforcement officials were "attorney[s] for the

The Honorable Adam Schiff
Page Four

government" who may therefore have access to grand-jury information. The Court rejected that conclusion, holding that Rule 6(e) permits disclosure without a court order *only* to persons who are members of the "prosecution team" and are carrying forward the criminal enforcement responsibilities of the grand jury. 463 U.S. at 429–31. The Department's interpretation of "federal . . . government official" in Rule 6(e)(3)(D) is consistent with the Court's reasoning in *Sells Engineering*.

Finally, even if Members of Congress could be included within the second sentence of Rule 6(e)(3)(D), the only authorized disclosures would be limited to information concerning "a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent." Such information would need to be shared for the purpose of preventing or responding to ongoing threats or intelligence activities. The exception would not extend to factual materials bearing upon an historical reconstruction of completed activities that do not bear upon a current effort to prevent or respond to an ongoing matter. Thus, this provision could not be read to authorize the disclosure of grand-jury materials in connection with the Special Counsel's investigation.

As you know, the Department takes very seriously future threats to our elections from foreign adversaries and is working diligently to combat those threats. While it is true that such threats could come from Russia, the Special Counsel investigated past events, not future threats. The national-security exception to grand-jury secrecy does not extend to the type of purely historical information you seek. Moreover, the public report, as well as the minimally redacted report that is available to your Committee, more than explains the evidence uncovered concerning Russian efforts to interfere in the 2016 presidential election, and there is therefore no national-security need to see grand-jury information that is protected by law from disclosure.

We hope that this information is useful to you. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc: The Honorable Devin Nunes
    Ranking Member