UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* APPLICATION OF THE COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF REPRESENTATIVES, FOR AN ORDER AUTHORIZING THE RELEASE OF CERTAIN GRAND JURY MATERIALS | Grand Jury No. 19-48 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION DIRECTING DOJ TO UNSEAL PORTION OF DECLARATION IMPROPERLY REDACTED UNDER FED.R. CRIM. P. 6(e)**

The Department of Justice ("DOJ"), in an effort to bolster its position that the House of Representative's Committee on the Judiciary ("HJC") "has failed to establish a particularized need for the requested grand jury materials" from Special Counsel Robert S. Mueller III's *Report on the Investigation Into Russian Interference In The 2016 Presidential Election* ("the Mueller Report"), DOJ's Resp. to App. of HJC for an Order Authorizing Release of Certain Grand Jury Materials ("DOJ Resp."), at 30 (capitalization altered), ECF No. 20, filed an *ex parte*, *in camera* declaration about the grand jury–material redactions in Volume II of the Mueller Report, *see* Min. Ord. (Sept. 12, 2019), which Volume focused on possible obstruction of justice by the President. DOJ publicly filed a redacted version of the declaration. *See* DOJ Resp., Ex. 10, Decl. of Associate Deputy Attorney General ("ADAG") Bradley Weinsheimer ("Redacted ADAG Decl."), ECF No. 20-10. Never having seen the grand jury information redacted from the Mueller Report or the unredacted ADAG Declaration, HJC raises no objection to the appropriateness of DOJ's redactions under Federal Rule of Criminal Procedure 6(e). That Rule provides that government attorneys, among others, "must not disclose a matter occurring before the grand jury." FED. R. CRIM. P. 6(e)(2)(B).

1

The unredacted ADAG Declaration indicated that DOJ broadly interpreted Rule 6(e) as cloaking in secrecy the identities of individuals who did not testify before the grand jury. DOJ's assertion that identifying individuals *who did not testify* before the grand jury as part of the Mueller investigation would reveal "a matter occurring before the grand jury" is without merit and rejected. Accordingly, DOJ must refile a redacted version of the ADAG Declaration with the first sentence, part of the second sentence, and the final sentence of paragraph four unredacted.

**I.     BACKGROUND**

HJC has filed an application for an order authorizing the release of certain grand jury materials related to the Special Counsel's investigation, including the information redacted pursuant to Rule 6(e) from the public version of the Mueller Report. *See* HJC's App. for an Order Authorizing the Release of Certain Grand Jury Materials ("HJC App."), ECF No. 1.[1] To obtain such an order of disclosure, HJC must show a particularized need to use the requested material "preliminarily to or in connection with a judicial proceeding." FED. R. CRIM. P. 6(e)(3)(E)(i); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). DOJ has vigorously opposed the requested disclosure, *see generally* DOJ Resp., and, as noted above, submitted the ADAG Declaration to demonstrate that HJC could not meet its burden of establishing a particularized need for the grand jury material cited in the Report's Volume II. *See* DOJ Resp. at 5 n.1 (noting submission of "sealed declaration further addressing the issue of particularized need" and explaining need for sealing "because it contains factual information that is itself subject to protection under Rule 6(e)").

---

[1]     DOJ determined that other redactions to the Mueller Report were necessary to avoid compromising sources and methods, ongoing law enforcement matters, and the personal privacy of third parties, DOJ Resp. at 7, but certain members of Congress were nonetheless provided access to these three categories of redacted information, *id*. at 8.

The ADAG Declaration "describe[d] the redacted information [in Volume II], and other grand jury matters relevant to the court's consideration." Redacted ADAG Decl. ¶ 3. Those descriptions were crafted to serve DOJ's view that Volume II's redactions for grand jury secrecy were limited. *See id.* ¶ 3 ("In the 182 pages of Volume II of the Mueller Report, only 5 pages contain redactions of brief references to matters occurring before the grand jury . . . ."); *see also* DOJ Resp. at 31 (stating that "redacted grand jury information comprises less than 2% of the overall Report, and in Volume II . . . 99.9% of the Report is unredacted."). In pressing this view, and in revealing to the Court the material redacted from Volume II, DOJ intended to support its argument that "[t]he Committee provides no reason to believe that anything useful to their investigation into the President lies under those redactions." DOJ Resp. at 31.

Advancing this same argument, paragraph four of the ADAG Declaration, which is redacted in full in the public version, addressed individuals of special interest to the Committee — individuals whose FBI Interview Reports ("FD-302s" or "302s") HJC has requested because those 302s are referenced in Volume II. *See* HJC App., Ex. O, Letter from Representative Jerrold Nadler, Chairman, House Committee on the Judiciary, to Attorney General William P. Barr and Pat Cipollone, Counsel to the President (May 24, 2019), at 5, ECF No. 1-16; *see also* DOJ's Supplemental Submission in Resp. to Min. Ord. of Oct. 8, 2019 ("DOJ Supp.") at 3, ECF No. 40 ("The Committee's request for certain FBI-302s contained a finite list of individuals. Identifying individuals who did not testify would necessarily reveal those who did testify. This is the precisely the case in paragraph four of the first [ADAG] Declaration." (internal citations omitted)). Paragraph four begins by identifying an individual who did not testify before the grand jury. It goes on to state that some individuals whose 302s were requested by HJC did

testify before the grand jury and then to identify those individuals. The paragraph concludes by identifying a second individual who did not testify before the grand jury.

DOJ made clear its purpose for filing both an *ex parte, in camera* and a public, redacted version of the ADAG Declaration, but this strategy has also had an unintended consequence: it exposed to the Court the interpretation of Rule 6(e)'s obligation of secrecy that DOJ had applied in redacting the declaration — and, presumably, in redacting the Mueller Report. At the hearing on HJC's petition, DOJ expressly disagreed with the proposition that "a witness who does not testify before the grand jury and is simply interviewed by the FBI is not protected by 6(e)." Hr'g Tr. at 53:21–53:24, ECF No. 38, prompting the Court to order supplemental briefing about "why paragraph [four], in the sealed [declaration], needs to continue to be redacted," *id.* at 54:20–54:22; Min. Ord. (Oct. 8, 2019). The Court recognized that DOJ's position "may have implications for the . . . scope of the redactions applied by the Department of Justice on the entire Mueller Report." Hr'g Tr. at 55:19–55:22.

In its supplemental filing, DOJ defended the redaction of paragraph four of the ADAG Declaration. *See* DOJ Supp. at 2–3. Recognizing the Court's concern that similar redactions had been applied to the Mueller Report, DOJ proactively has assured the Court that "[t]he Mueller Report . . . contains no redactions for the purpose of protecting the identities of those who did not testify before the grand jury." *Id.* at 3.

HJC has not challenged the scope of the redactions made to the Mueller Report pursuant to Rule 6(e). *See* Hr'g Tr. at 4:20–4:24; *id.* at 5:3–5:4 (HJC's counsel stated that "we have not raised any concerns about accuracy [of the redactions made for grand jury secrecy]."). With respect to the declaration, HJC recognizes that, without seeing the redacted text, it "cannot test the accuracy of DOJ's assertion" of grand jury secrecy. HJC's Resp. to DOJ's Second

Supplemental Submission ("HJC Resp.") at 2, ECF No. 41.  Rather than place its trust in DOJ's redactions, HJC asks the Court to evaluate whether the information in paragraph four is covered by Rule 6(e).  *Id.*  HJC further "requests . . . access to any Rule 6(e) material in paragraph four," if the Court determines that the paragraph is properly redacted "and subsequently rules in the Committee's favor on the merits of the Committee's Rule 6(e) application."  *Id.*

## II.     ANALYSIS

The critical phrase "matter occurring before the grand jury" is undefined in Rule 6(e), and has been described by the D.C. Circuit to encompass, at its "core," "[i]nformation actually presented to the grand jury."  *In re Sealed Case No. 99-3091* (*Office of Indep. Counsel Contempt Proceeding*), 192 F.3d 995, 1002 (D.C. Cir. 1999) (per curiam).  Clear examples of secret grand jury material include transcripts and summaries of proceedings or witness testimony before the grand jury, as well as the questions or deliberations of grand jurors.  *See, e.g.*, *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2003); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981).

The meaning of "matter[s] occurring before the grand jury" can extend further to information "that would 'tend to reveal some secret aspect of the grand jury's investigation, including" the "strategy" or future "direction of the investigation.'"  *Bartko v. Dep't of Justice*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Hodge*, 703 F.3d at 580 (D.C. Cir. 2003)); *see also, e.g.*, *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499–500 (D.C. Cir. 1998) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc))).[2]  The D.C. Circuit,

---

[2]    Other circuits have interpreted Rule 6(e)'s rule of secrecy similarly, to cover "what took place in the grand jury room."  *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1176 (10th Cir. 2006) (quoting *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987)); *see also, e.g., United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993); 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 106 (4th ed. 1999) ("The rule of secrecy also applies to anything else that might indirectly reveal what happened in the grand-jury room.").

however, has "cautioned . . . about 'the problematic nature of applying so broad a definition,'" *In re Sealed Case No. 99-3091*, 192 F.3d at 1001 (quoting *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1071 n.12 (D.C. Cir. 1998) (per curiam)), and has emphasized that Rule 6(e) does not allow DOJ to "draw a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury," *Labow v. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016) (alteration in original) (internal quotation marks omitted) (quoting *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)); *see also Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1100 (D.C. Cir. 2014) ("[T]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers, let alone any and all information which could reach the grand jury." (alteration in original) (citation omitted) (internal quotation marks omitted)). Indeed, Rule 6(e) does not bar "the disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury,'" *In Re Sealed Case No. 99-3091*, 192 F.3d at 1002 (quoting *Senate of P.R.*, 823 F.2d at 582) (alteration in original).

As already noted, the identity of an individual who testified before the grand jury is clearly a "matter occurring before the grand jury." *See e.g.*, *Hodge*, 703 F.3d at 580; 1 Wright & Miller, at § 106.[3] This is true in the most literal sense: a witness's testimony transpires in front of the grand jury.

That an individual's testimony was subpoenaed by the grand jury is also a "matter occurring before the grand jury." *See Lopez v. Dep't of Justice*, 393 F.3d 1345, 1350 (D.C. Cir.

---

[3] Notably, "it is well established that a witness is not bound to secrecy as to his own testimony," *In re North*, 16 F.3d 1234, 1242 (D.C. Cir. 1994) (citing *In re Sealed Motion*, 880 F.2d 1367, 1370–73 (D.C. Cir. 1989)); *see also* FED. R. CRIM. P. 6(e)(2)(B) (omitting witnesses from the list of "persons" who "must not disclose a matter occurring before the grand jury"), so a witness can generally reveal that he or she testified before a grand jury and the substance of that testimony.

2005) (holding that grand jury subpoenas are "matter[s] occurring before the grand jury"). At the time of the subpoena, such an individual has not, literally speaking, appeared in the grand jury room. Nor does "the grand jury itself . . . decide whether to issue the subpoena; the prosecuting attorney does." *Id.* at 1349. Nevertheless, grand jury subpoenas may reflect the "direction" the grand jury will take, as "testimony subpoenaed is that which is intended to be used by the grand jury." *Id.* at 1350; *see also In re Sealed Case No. 99-3091*, 192 F.3d at 1003 (recognizing that "not yet delivered but clearly anticipated testimony" is a "matter occurring before the grand jury").[4] The fact of a grand jury subpoena for an individual's testimony is thus protected by Rule 6(e) because it reflects a "matter[] which will occur." *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980) (discussing "persons who will be called to testify").

By contrast, identifying an individual who did not testify before the grand jury does not violate Rule 6(e). DOJ concedes that this is "normally" true. DOJ Supp. at 2 ("[T]he identification of who did not testify before the grand jury would not normally violate Rule 6(e)."). That concession is consistent with the legal principles already discussed. Unlike revealing the identity of a witness or the recipient of a subpoena for testimony, disclosing that an individual did not testify exposes nothing about what did or what will occur before the grand jury. *See Lopez*, 393 F.3d at 1350 (explaining the fundamental principle that, to be a "matter occurring before the grand jury," information must have some "nexus" to the grand jury's "inner workings"); *see also In re Sealed Case No. 99-3091*, 192 F.3d at 1001 (stating the position that

---

[4] Classifying the identities of testifying witnesses and of individuals subpoenaed to testify as "matter[s] occurring before the grand jury" serves the purposes of grand jury secrecy, including "to encourage all witnesses to step forward and testify freely without fear of retaliation." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 (1958); *see also, e.g.*, *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 210 (D.C. Cir. 2015) ("The risk of retaliation against grand jury witnesses is one reason for maintaining grand jury secrecy."); *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (per curiam) (observing that secrecy "encourage[s] witnesses to testify 'fully and frankly'" (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979))).

"matters occurring outside the physical presence of the grand jury are covered only if they reveal grand jury matters"); *cf. Senate of P.R.*, 823 F.2d at 583 n.30 (observing that the "use" of grand jury material does not constitute "disclosure" of that material where no grand jury transcripts, exhibits, or witnesses are quoted or mentioned (citing *United States v. John Doe, Inc. I*, 481 U.S. 102 (1987)).

This conclusion — that identifying a non-testifying individual does not violate Rule 6(e) — holds even when the individual was at one time a potential grand jury witness. As already mentioned, while the grand jury is ongoing, a potential witness's identity is protected insofar as that witness's testimony has been subpoenaed. Secrecy is also warranted where the testimony is otherwise *likely*, as in "about to be presented" or "not yet delivered but clearly anticipated." *In re Sealed Case No. 99-3091*, 192 F.3d at 1002–03; *see also Ctr. for Nat.'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 949 (D.C. Cir. 2003) (Tatel, J., dissenting) (reaching a Rule 6(e) issue not considered by the panel majority and explaining that the rule of secrecy covers the identities of those "likely to testify" before a grand jury but not of those "who might testify at some indefinite point in the future"). Once a grand jury has concluded without hearing an individual's testimony, however, the individual can no longer be a likely witness. The individual's past status as a potential witness sheds no light on the direction the grand jury took but merely reflects the scope of a government investigation "parallel" to the grand jury's. *Ctr. for Nat. Sec. Studies*, 331 F.3d at 949; *see also Lopez*, 393 F.3d at 1350 (distinguishing between the actions "of the prosecutor *qua* prosecutor," which are not protected by 6(e), and the actions of the "prosecutor *qua* grand jury facilitator," which may be).

Revelations in the Muller Report about a key individual — President Donald Trump — illustrate that the identity of a possible grand jury witness who did not ultimately testify before

the grand jury is not a "matter occurring before the grand jury." Volume II of the Report discloses (1) that the President declined the Special Counsel's invitations to be interviewed voluntarily, and (2) that the Special Counsel considered subpoenaing the President to testify before the grand jury but ultimately decided not to issue the subpoena. *See* Mueller Report Volume II at 13; *see also* Mueller Report App'x C-2.[5] As this example makes crystal clear, revealing that the President never appeared before the grand jury exposes nothing about what did happen in the grand jury room. Further, even explicit discussion of the choice not to subpoena the President communicated nothing about the *grand jury's* investigative or deliberative process: as the Report says, the *prosecutor* made that choice.

Despite DOJ's concession that "the identification of who did not testify would not normally violate Rule 6(e)," DOJ Supp. at 2, and despite the decision not to redact from the Mueller Report revelations about the President not appearing before the grand jury, DOJ maintains that "in the context of this matter, releasing" the information about non-grand jury witnesses in paragraph four "would violate the rule," *id.* at 2–3. Justifying this position, DOJ writes that "[t]he Committee's request for certain FBI-302s contained a finite list of individuals," making public (for the first time) that paragraph four concerns the 302s sought by HJC. *Id.* at 3. As a result, DOJ reasons, "[i]dentifying individuals who did not testify would necessarily reveal those who did testify." *Id.* (citing Second ADAG Decl. ¶ 4).

---

[5] The Report explains that, "[a]fter extensive discussions with the Department of Justice about the Special Counsel's objective of securing the President's testimony," Mueller Report App'x C-1, and despite finding the President's written answers "insuffic[ient]," "incomplete or imprecise," and "inadequate," *id.* at C-1–C-2, the Special Counsel's office nonetheless decided not to subpoena the President after "weigh[ing] the costs of potentially lengthy constitutional litigation, with resulting delay in finishing our investigation, against the anticipated benefits for our investigation and report," *id*. at C-2.

DOJ is wrong as a matter of fact.[6]  Making public the first sentence, part of the second sentence,[7] and the final sentence of paragraph four would disclose (1) that two individuals did not testify before the grand jury and (2) that some unknown number of individuals whose 302s HJC has requested did testify before the grand jury.[8]  HJC has requested every 302 referenced in Volume II of the Muller Report — 33 in total.  *See* DOJ App., Ex. O, at 5.  Given that context, identifying two individuals who did not testify would not "necessarily reveal those who did testify."  DOJ Supp. at 3.  Solving by elimination for the testifying individuals among the 33 on the list would require more than the names of two non-testifying individuals: one would need the number among the 33 who did testify, and (assuming that this number is fewer than 31) one would need a complete (or at least a more complete) list of those who did not testify.  Any risk that HJC, or anyone else, "could divine or reverse-engineer" a list of grand jury witnesses from the list of requested 302s and the portions of paragraph four at issue is miniscule.  *See In re Grand Jury Subpoenas*, 454 F.3d 511, 522 (6th Cir. 2006) (deeming documents to be unprotected by Rule 6(e) despite "[t]he marginal increase in the risk that the [requesters of the documents] could divine or reverse-engineer the grand jury's investigative purpose by reviewing" those documents).

DOJ's reliance on context is unconvincing for another reason.  "[T]he government cannot immunize" the identities of non-grand jury witnesses from disclosure "by publicizing the link" between witnesses and non-witnesses.  *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 100

---

[6]  Situations may arise where revealing the name of an individual who did not testify before the grand jury would necessarily reveal the identity of an individual who did testify, but this is not one of those situations.  *Cf. Labow*, 831 F.3d at 530 (holding that documents subpoenaed by a grand jury are not by their nature a "matter occurring before the grand jury" but that the context of the disclosure could make such documents Rule 6(e) material).

[7]  The portion of the second sentence at issue includes everything from the first word through the phrase "with the exceptions of."

[8]  To the extent those grand jury witnesses are named in paragraph four, that information is protected by Rule 6(e).

(D.C. Cir. 1988) (citing *Senate of P.R.*, 823 F.2d at 583). DOJ cannot, and indeed, does not attempt to, argue that disclosing the identities of the two non-witnesses would reveal anything secret about the grand jury outside the context — the list of requested 302s — that DOJ both created, in submitting the declaration, and revealed, in its recent supplemental filing.

In sum, DOJ erred in redacting the first sentence, part of the second sentence, and the final sentence of paragraph four on the theory that information about individuals who did not testify before the grand jury would reveal a "matter occurring before the grand jury." DOJ appears to have applied this theory about non-witnesses selectively — to the ADAG Declaration but not to the Mueller Report itself. *See* DOJ Supp. at 3 (representing that the Mueller Report "contains no redactions for the purpose of protecting the identities of those who did not testify before the grand jury").

On a final note, by contrast to the explanation offered by the Special Counsel about why he decided not "to issue a subpoena for [the President's] testimony," Mueller Report App'x C-2, no such explanation is provided for why the Special Counsel chose not to compel the two individuals named in paragraph four to testify under oath before the grand jury, and the Special Counsel's reasons remain unknown. The reason is not that the individuals were insignificant to the investigation. To the contrary, both of the non-testifying individuals named in paragraph four figured in key events examined in the Mueller Report. Assessment of these choices by the Special Counsel is a matter for others. This Court holds only that Rule 6(e) is no barrier to disclosure of the identities of two individuals whose testimony the Special Counsel chose not to present to the grand jury.

## III.  CONCLUSION

For the reasons stated, DOJ must refile a redacted version of the ADAG Declaration with the first sentence, part of the second sentence, and the final sentence of paragraph four unredacted.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

DATE: October 17, 2019

_____
BERYL A. HOWELL
Chief Judge