**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF THE COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF REPRESENTATIVES, FOR AN ORDER AUTHORIZING THE RELEASE OF CERTAIN GRAND JURY MATERIALS | No. 19-gj-48 (BAH) |

**OPPOSITION OF THE COMMITTEE ON THE JUDICIARY,
U.S. HOUSE OF REPRESENTATIVES, TO THE DEPARTMENT OF JUSTICE'S
MOTION FOR A STAY PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. Disclosure to the Committee of Materials Critical to the House's Impeachment Inquiry Will Not Irreparably Injure DOJ ................................................................................................. 2

II. This Court Correctly Authorized Disclosure Under Rule 6(e), and DOJ Has Not Made Any Showing—Much Less a Strong Showing—that the Court Was Wrong ................................... 5

III. A Stay Pending Appeal Would Substantially Injure the Committee and Disserve the Public Interest ................................................................................................................................ 13

CONCLUSION ............................................................................................................................. 16

# INTRODUCTION

This Court should deny the stay sought by the Department of Justice (DOJ) so that the Committee on the Judiciary (Committee) of the U.S. House of Representatives can promptly access grand jury materials essential to its urgent impeachment inquiry.[1] These materials will aid the Committee in determining whether President Donald J. Trump committed impeachable offenses when he attempted to obstruct the Special Counsel's investigation of Russian interference in the 2016 Presidential election.[2] The materials are also relevant to the House's investigation of the President's solicitation of Ukrainian interference in the 2020 Presidential election.[3] Recognizing the urgency of these matters, and correctly concluding that the disclosure the Committee seeks is "preliminar[y] to … a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), this Court ordered prompt disclosure to the Committee. *See In re App. of the Comm.*, — F. Supp. 3d —, 2019 WL 5485221, at *38 (D.D.C. Oct. 25, 2019).

For the reasons explained below, DOJ has not satisfied the "stringent requirements" for a stay pending appeal. *Citizens for Responsibility & Ethics in Wash. v. FEC* (*CREW*), 904 F.3d 1014, 1016 (D.C. Cir. 2018) (per curiam). This Court's decision is correct and disclosure will cause DOJ no injury. Conversely, withholding disclosure would cause severe harm to the Committee and the public by depriving the House of information essential to its ongoing impeachment investigation. The Committee respectfully requests that the Court deny DOJ's motion.

---

[1] *See* DOJ's Mot. to Stay Disclosure Order Pending Appeal (DOJ Mot.) (Oct. 28, 2019), ECF No. 48.
[2] *See* App. of the Comm. (Comm. App.) (July 26, 2019), ECF No. 1.
[3] *See* Reply of the Comm. (Comm. Reply) at 2, 20-21 (Sept. 30, 2019), ECF No. 33.

**ARGUMENT**

"A stay pending appeal is always an extraordinary remedy[.]" *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 374 F.2d 269, 275 (D.C. Cir. 1966) (per curiam). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation marks omitted). In seeking a stay, DOJ must establish that it "will be irreparably injured absent a stay" and make "a strong showing that [it] is likely to succeed on the merits." *Id.* at 434 (quotation marks omitted). Irreparable injury and likelihood of success "are the most critical" factors, *id.*, and DOJ cannot satisfy either of them. In addition, the Court must consider "whether issuance of the stay will substantially injure [the Committee]" and "where the public interest lies." *Id.* (quotation omitted). These factors also weigh decisively in the Committee's favor.

**I.      Disclosure to the Committee of Materials Critical to the House's Impeachment Inquiry Will Not Irreparably Injure DOJ**

Complying with this Court's disclosure order will not irreparably injure DOJ. Indeed, DOJ makes no effort to claim that it will suffer any direct injury from disclosure to the Committee. Nor could it: the grand jury is not a creature of the Executive Branch. *United States v. Williams*, 504 U.S. 36, 47 (1992) (explaining that the grand jury "has not been textually assigned … to any of the branches"); *see, e.g.*, *United States v. Drake*, 310 F. Supp. 3d 607, 621 (M.D.N.C. 2018) ("A federal grand jury and the DOJ are separate entities."). Instead, DOJ asserts that disclosure to the Committee will cause irreparable injury because "grand jury secrecy will be pierced" and materials "will be disclosed to persons beyond those enumerated as lawful recipients by Rule 6(e)." DOJ Mot. at 3. But this generalized harm to grand jury secrecy is just another framing of DOJ's argument on the merits. As discussed below, that argument is incorrect.

Moreover, courts have already rejected DOJ's contention, explaining that a "merely generalized assertion of secrecy in grand jury materials must yield to a demonstrated, specific need for evidence in a pending impeachment investigation." *In re Request for Access to Grand Jury Materials, Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1444 (11th Cir. 1987).  Grand jury secrecy will always be pierced when a court has ordered disclosure pursuant to Rule 6(e).  Other than to assert that DOJ disagrees with this Court's ruling and that the disclosure would be difficult to undo, DOJ has no explanation for why it would suffer harm warranting a stay.  DOJ notably has not argued that disclosure would threaten any ongoing matters, abandoning an argument that it advanced earlier (albeit vaguely).  *See* Comm. Reply at 23-24.[4]  In any event, DOJ has already disclosed to the Committee and the House Permanent Select Committee on Intelligence (HPSCI) certain materials that were redacted in the public version of the Mueller Report as potentially implicating ongoing matters, *see id.* at 24, and there has been no assertion that that disclosure has resulted in any harms.

In any event, the harm that DOJ asserts to general interests in grand jury secrecy is minimal in this context.  As this Court correctly recognized, "[a]ny 'considerations justifying' continued grand jury 'secrecy bec[a]me less relevant' once the Special Counsel's investigation, and attendant grand jury work, concluded." *In re App.*, 2019 WL 5485221, at *37 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)).  DOJ thus does not contend that disclosure would threaten the immediate values served by grand jury secrecy, such as preventing

---

[4] After the Court directed DOJ to indicate whether any materials redacted in the Mueller Report pursuant to Rule 6(e) may have been redacted for other reasons as well, DOJ provided a table in a supplemental filing indicating six such instances.  *See* Second Decl. of Bradley Weinsheimer ¶ 3 (Oct. 11, 2019), ECF 40-1.  It pointed to only a single instance in which material redacted pursuant to Rule 6(e) was also designated through FOIA litigation as implicating ongoing law enforcement matters. *See id.* (citing Mueller Report, Vol. I at 176).

flight by the targets of criminal investigations, safeguarding the impartiality of sitting grand jurors, and protecting active witnesses. *See Douglas Oil*, 441 U.S. at 218-19.

There is also no reason to conclude—and DOJ offers none—that denying a stay on the facts of this case would irreparably harm the long-term interests of the grand jury. The Court's order covers only a limited range of materials: a set of specific redactions and the transcripts and exhibits underlying them. It is unlikely that these targeted disclosures—made in the extraordinary context of a Presidential impeachment inquiry—would deter future witnesses from testifying candidly before other grand juries. *See In re App.*, 2019 WL 5485221, at *37.

In addition, as the D.C. Circuit has made clear, "[t]he courts must presume that the committees of Congress will exercise their powers responsibly and with due regard for the rights of affected parties." *Exxon Corp. v. FTC*, 589 F.2d 582, 589 (D.C. Cir. 1978); *see id.* at 594 (citing the "presumption of congressional propriety" in treating sensitive information). Here, the Court has ordered disclosure to the Committee, and the Committee has provided that absent a further vote, any grand jury materials it receives will remain confidential pursuant to its "Procedures for Handling Grand Jury Information." *See In re App.*, 2019 WL 5485221, at *37 & n.44. DOJ still has not offered any "basis on which to assume that the Committee's use of the material will be injudicious or that it will disregard or change these procedures." *Id.* at *37 (quotation marks and alterations omitted).

Finally, DOJ incorrectly argues that any harm from disclosure would be irremediable, and erroneously implies that disclosure would moot DOJ's appeal. In *United States v. Sells Engineering*, the Supreme Court held that a disclosure of grand jury materials was unlawful even after disclosure had occurred, recognizing that when disclosure causes harm, that harm continues to accrue over time as additional people are provided with access. *See* 463 U.S. 418, 422 n.6

(1983) (explaining that the refusal by the court of appeals to stay the district court's disclosure order did not moot the case given that "preventing further disclosure" would afford "partial relief" (quotation marks omitted)).

"Irreparable harm must be both certain and great, and actual and not theoretical." *CREW*, 904 F.3d at 1019 (quotation marks omitted). This Court should deny the stay because DOJ has failed to show that it will be irreparably harmed by this Court's order.

## II. This Court Correctly Authorized Disclosure Under Rule 6(e), and DOJ Has Not Made Any Showing—Much Less a Strong Showing—that the Court Was Wrong

In authorizing disclosure, the Court correctly determined that: (1) Rule 6(e)'s exception for judicial proceedings encompasses impeachments, *see In re App.*, 2019 WL 5485221, at *11-23; (2) the Committee's investigation is preliminary to a judicial proceeding within the meaning of Rule 6(e), *see id.* at *23-32; and (3) the Committee has a particularized need for the disclosure it seeks, *see id.* at *32-38. In its stay motion, DOJ does not address the second conclusion, and its arguments against the first and third are unavailing.

**1. a.** DOJ's interpretation of Rule 6(e) as not including impeachments is foreclosed by D.C. Circuit precedent and DOJ's own prior litigation position. "The D.C. Circuit has already expressly concluded at least twice—in *Haldeman v. Sirica* and *McKeever v. Barr*—that an impeachment trial is a 'judicial proceeding' under Rule 6(e)[.]" *In re App.*, 2019 WL 5485221, at *19. In *Haldeman*, the en banc D.C. Circuit rejected the argument "that impeachment does not fall into th[e] category" of judicial proceedings set forth in Rule 6(e). 501 F.2d 714, 715 (D.C. Cir. 1974). The fact that *Haldeman* arose on mandamus makes no difference, as this Court has explained, because the portion of *Haldeman* addressing Rule 6(e) did not mention the mandamus standard and instead resolved the question on the merits. *See In re App.*, 2019 WL 5485221, at *21.

5

If there were any doubt about the proper interpretation of *Haldeman*, the D.C. Circuit resolved it less than one year ago in *McKeever*, explaining that *Haldeman* is best understood to hold that impeachment "fit[s] within the Rule 6 exception for 'judicial proceedings.'" 920 F.3d 842, 847 n.3 (D.C. Cir. 2019). DOJ characterizes *McKeever*'s discussion of *Haldeman* as dicta, but "[a]gain, DOJ is wrong." *In re App.*, 2019 WL 5485221, at *22. *McKeever*'s interpretation of *Haldeman* was essential to its holding and was the principal source of disagreement between the *McKeever* majority and dissent.

DOJ is in any event foreclosed from taking a contrary position now because it "changed its longstanding position regarding whether impeachment trials are 'judicial proceedings.'" *Id.* at *22 n.30. In *McKeever*, it urged the D.C. Circuit to adopt the interpretation of Rule 6(e) and *Haldeman* that it now disclaims. *See* Br. for Appellee at 37, *McKeever*, 920 F.3d 842 (No. 17-5149), 2018 WL 2684575 (explaining that the D.C. Circuit has "treated *Haldeman* as standing … for the proposition that an impeachment proceeding may qualify as a 'judicial proceeding' for purposes of Rule 6(e)"). Having persuaded the D.C. Circuit to accept its interpretation of the relevant circuit precedent in *McKeever*, DOJ may not now, "simply because [its] interests have changed, assume a contrary position." *Temple Univ. Hosp. v. NLRB*, 929 F.3d 729, 733 (D.C. Cir. 2019) (quotation marks omitted).

**b.** Even if DOJ's argument were not foreclosed, it would fail on its own merits. As this Court explained in its thorough discussion of the issue, impeachment trials qualify as "judicial proceedings" under Rule 6(e).

The text of the Constitution demonstrates that impeachment trials are judicial proceedings. Article I provides that "[t]he Senate shall have the sole Power to try all Impeachments," and specifies that when the President is tried, "the Chief Justice shall preside."

6

U.S. Const., Art. I, § 3, cl. 6. Article I further refers to "Judgment in Cases of Impeachment," which "shall not extend further" than removal and disqualification, "but the Party convicted" may be subject to a criminal trial "according to Law." *Id.*, Art. I, § 3, cl. 7. And Article III describes an impeachment trial as a type of "Trial of all Crimes." *Id.*, Art. III, § 2, cl. 3. As this Court recognized, these "words employed in the Constitution to describe the Senate's role"—words including "trial," "convict," "judgment," "case," and "crime"—contemplate a judicial proceeding. *In re App.*, 2019 WL 5485221, at *16.

The Framers accordingly understood impeachment proceedings to involve the exercise of judicial power. The Federalist Papers explain that the Senate is the "depositary of *judicial power* in cases of impeachment," *The Federalist No.* 47 (James Madison) (emphasis added); they refer to "the *judicial character* [of the Senate] as a court for the trial of impeachments," *The Federalist No.* 65 (Alexander Hamilton) (emphasis added); and they explain that the Senate is "assign[ed] … the right of *judging*" as a "*court* of impeachments," *The Federalist No. 66* (Alexander Hamilton) (emphasis added). When Alexander Hamilton in *The Federalist No. 66* addressed the argument that tasking the Senate with conducting impeachment trials "confounds legislative and judiciary authorities in the same body," he did not dispute that this arrangement produces an "intermixture" of "legislative and judiciary authorities" in the Senate, but rather explained that this "partial intermixture" is "not only proper but necessary to the mutual defense of the several members of the government against each other." *Id.*; *see In re App.*, 2019 WL 5485221, at *15.

Consistent with the constitutional text and other Founding-era evidence, the Supreme Court has recognized that "[t]he Senate … exercises the *judicial power* of trying impeachments." *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1880) (emphasis added); *see id.* at 190 (finding "no

reason to doubt" that Congress, in exercising its impeachment authority, has "the right to compel the attendance of witnesses, and their answer to proper questions, in the same manner and by the use of the same means that courts of justice can in like cases").

In light of the constitutional text and the Supreme Court precedent interpreting it, impeachment trials constitute judicial proceedings under Rule 6(e). That conclusion is further compelled by the fact that, as this Court explained, the term "judicial proceeding" in Rule 6(e) "has been given a broad interpretation by the courts" and may include "every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *In re Sealed Motion*, 880 F.2d 1367, 1379-80 (D.C. Cir. 1989) (per curiam) (quotation marks omitted). Indeed, it would be "incredible" if grand jury matters available with respect to other judicial proceedings were "unavailable to the House of Representatives in a proceeding of so great import as an impeachment investigation." *In re Report & Rec. of June 5, 1972 Grand Jury*, 370 F. Supp. 1219, 1230 (D.D.C. 1974) (Sirica, J.).

**2.** DOJ does not contest this Court's conclusion that the Committee's investigation is preliminary to an impeachment trial in the Senate, *In re App.*, 2019 WL 5485221, at *23-32, and for good reason. First, this Court correctly held that the "'primary purpose[]' … of [the Committee's] investigation is to determine whether to recommend articles of impeachment." *Id.* at *23 (quoting *United States v. Baggot*, 463 U.S. 476, 480 (1983)). Ample evidence supports this conclusion. *See id.* at *29-30 (surveying, among other things, a Committee report; a House resolution authorizing this action; Chairman Nadler's memorandum and hearing statements; a Committee resolution; and Speaker Pelosi's statement that the House is "moving forward with an official impeachment inquiry" (quotation marks omitted)).

8

Second, what that evidence confirms about the purpose of the Committee's investigation as a whole is certainly true with regard to the "primary purpose" of the specific "*disclosure*" the Committee seeks here. *Baggot*, 463 U.S. at 480 (emphasis added). That the Committee's investigation encompasses whether the President's misconduct may also merit legislative and oversight responses, *e.g.*, App. at 2, 12 & nn.3-4, does not alter the fact that the primary purpose of disclosure to the Committee is to aid the Committee's determination whether or not to impeach. *See In re App.*, 2019 WL 5485221, at *29 ("'Congress's decision whether, and if so how,' to act 'will necessarily depend on what information it discovers in the course of an investigation, and its preferred path forward may shift as members educate themselves on the relevant facts and circumstances.'" (quoting *Trump v. Mazars USA, LLP*, — F.3d —, 2019 WL 5089748, at *13 (D.C. Cir. Oct. 11, 2019))).

Third, this Court properly rejected DOJ's argument that the primary purpose of disclosure cannot be impeachment because the Committee cannot itself initiate an impeachment trial in the Senate. As this Court recognized, *Baggot* shows "that the requisite judicial proceeding need not be subject to initiation by the party seeking disclosure." *Id.* at *25 (citing *Baggot*, 463 U.S. at 482-83). Rather, under Supreme Court and D.C. Circuit precedent, the requisite "proceeding need only be 'anticipated[]' … or 'possible[.]'" *Id.* (quoting *Baggot*, 463 U.S. at 480; *In re Grand Jury*, 490 F.3d 978, 986 (D.C. Cir. 2007)). Here, an impeachment trial is an anticipated or possible consequence of the Committee's investigation, for the reasons stated by this Court and summarized above. *See also id.* at *25-28 (rejecting the argument that a House resolution is needed to authorize the Committee's impeachment inquiry); *id.* at *30-31 (declining DOJ's invitation to "impermissibl[y] intru[de] on the House's constitutional authority under the Rulemaking and Impeachment Clauses").

9

**3.** The Supreme Court has instructed that determinations of "particularized need" are committed to the "considered discretion of the district court." *Douglas Oil*, 441 U.S. at 228. DOJ's efforts to challenge this Court's exercise of its discretion fail.

DOJ principally argues that the materials the Committee seeks are not related to the House's ongoing impeachment inquiry, which DOJ asserts "will focus narrowly on the whistleblower complaint and issues surrounding Ukraine." DOJ Mot. at 6; *see id.* at 5. DOJ is wrong about the scope of the House's inquiry: as the Committee confirmed at oral argument, "it's not just Ukraine that's the focus." 10/8 Hr'g Tr. at 32 ("I can't emphasize [this] enough[.]"). After referencing "several months" of "investigat[ions]" by House "Committees" to "gather all the relevant facts and consider whether to … approv[e] articles of impeachment," Speaker Pelosi "direct[ed] … six Committees"—including the Judiciary Committee, and not just HPSCI—"to proceed with their investigations under that umbrella of impeachment inquiry."[5] For months, the Judiciary Committee has been investigating the substantial evidence of misconduct detailed in the Mueller Report as part of the Committee's consideration of "whether to approve articles of impeachment with respect to the President." H.R. Rep. No. 116-105, at 13 (June 6, 2019). As the Speaker and the undersigned counsel have confirmed, the Committee's investigation is part of the House's impeachment inquiry.

Yet, even if the House's inquiry were as narrow as DOJ claims—and it is not—DOJ's objections would still fail: the Judiciary Committee has explained that the grand jury materials

---

[5] *Pelosi Remarks* (Sept. 24, 2019), https://perma.cc/6EQM-34PT. In seeking a stay, DOJ ignores Speaker Pelosi's actual remarks, on which the Committee relies here (in addition to all the other evidence before the Court, *see In re App.*, 2019 WL 5485221, at *29), in favor of a news article that does not quote the Speaker on the relevant issue, *see* DOJ Mot. at 5-6.

10

at issue may also be relevant to HPSCI's investigation of the President's solicitation of Ukrainian interference in the 2020 election.  *See* Comm. Reply at 20-21.

DOJ additionally claims that the Committee has articulated only a "generalized," and not a "specific," need for disclosure.  DOJ Mot. at 5 (emphasis omitted).  This Court correctly found to the contrary.  To be sure, the Court began by recognizing the importance of disclosure in broad terms, as preserving "the public's faith in the [impeachment] process" and avoiding "constitutional problems."  *See In re App.*, 2019 WL 5485221, at *33-34.  Crucially, however, the Court then addressed specific "[f]eatures of the House's investigation and of the Mueller Report" and concluded that they make the Committee's "need for the grand jury materials … especially particularized and compelling."  *Id.* at *34.  In particular, the Court referenced a

> Trump Tower Meeting, Carter Page's trip to Moscow, Paul Manafort's sharing of internal polling data with a Russian business associate, and the Seychelles meeting, as well as information about what candidate Trump knew in advance about WikiLeaks' dissemination in July 2016 of stolen emails from democratic political organizations and the Clinton Campaign.

*Id.* at *34.  As the Court concluded, "Rule 6(e) material was redacted from the descriptions of each of these events in the Mueller Report and access to this redacted information is necessary to complete the full story for [the Committee]," *id.*, including with regard to the President's potential motives for obstructing the Special Counsel's investigation and any misconduct from the campaign that he might have been trying to conceal, *see* Comm. App. at 34-35; Comm. Reply at 20-22.  The Committee's detailed showing—made in the absence of access to the grand jury materials themselves—belies DOJ's suggestion that the Committee has not stated a specific enough need.

Relatedly, DOJ asserts that the Committee has "provided no basis to believe that" inconsistencies in the testimony of witnesses in the House's impeachment inquiry "occurred," at least as "to witnesses who have not already been indicted."  DOJ Mot. at 5.  DOJ never explains

11

how the Committee, lacking access to the materials, could nonetheless state a specific—and grave—allegation that the materials reveal that individuals lied to Congress. To the contrary, all the Committee and the Court can do at this stage, and all that they need to do, is point to the "numerous individuals" who have already provided relevant testimony to the House and the fact that one witness who spoke to both the Special Counsel and the House has already been convicted of making false statements to Congress. *In re App.*, 2019 WL 5485221, at *34 (concluding that "[t]he record … suggests that the grand jury material referenced or cited in the Mueller Report may be helpful in shedding light on inconsistencies or even falsities in the testimony of witnesses called in the House's impeachment inquiry"). And DOJ itself has "acknowledge[d] [that] disclosure of grand jury information when necessary to avoid misleading a trier of fact is a paradigmatic showing of particularized need." *Id.* (quotation marks omitted); *see Douglas Oil*, 441 U.S. at 222 n.12.

Finally, DOJ again claims that the material to which the Committee already purportedly has access ought to suffice for the Committee to determine whether to recommend that the President be impeached. *See* DOJ Mot. at 5-6. This Court correctly rejected that contention, concluding that "the sources DOJ identifies cannot substitute for the requested grand jury materials":

> To insure most effectively against being misled, [the Committee] must have access to all essential pieces of testimony by witnesses, including testimony given under oath to the grand jury. Additionally, for purposes of assessing and following up on the Mueller Report's conclusions, the full Report is needed: the grand jury material may offer unique insights, insights not contained in the rest of the Report, congressional testimony, or FBI-302 reports.

*In re App.*, 2019 WL 5485221, at *36.

* * *

Throughout its motion, DOJ characterizes its arguments against disclosure as "substantial" and asserts that "there is substantial room for debate on the merits." *See* DOJ Mot. at 4, 6. For the reasons stated above, DOJ is wrong. Regardless, even if DOJ were correct it would not matter. Under the applicable standard, substantial questions are not enough: DOJ must make "a *strong* showing" of likelihood of success. *Nken*, 556 U.S. as 434 (emphasis added). DOJ has not done so—"an arguably fatal flaw for [its] stay application." *CREW*, 904 F.3d at 1019 (noting that the D.C. Circuit has "declin[ed] to decide" whether likelihood of success is independently required); *see Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("read[ing] *Winter* [*v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)] at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement" (quotation marks omitted)).

### III.  A Stay Pending Appeal Would Substantially Injure the Committee and Disserve the Public Interest

A stay would substantially harm the Committee by depriving it of information it needs to carry out its constitutional impeachment function. Moreover, a stay would impair the public's interest in an efficient, fair impeachment process based on all of the relevant evidence. What Judge Sirica stated during Watergate remains true today: a Presidential impeachment inquiry is "a matter of the most critical moment to the Nation … . It would be difficult to conceive of a more compelling need than that of this country for an unswervingly fair inquiry based on all the pertinent information." *In re Report*, 370 F. Supp. at 1230.

**1.** Withholding disclosure will cause substantial harm to the Committee. As this Court's finding of particularized need (discussed above) confirms, the Committee urgently requires the grand jury information it seeks. *See In re App.*, 2019 WL 5485221, at *34-35. That information will shed critical light on Russian interference in the 2016 election and President Trump's

potential obstruction of justice.[6]  If this Court enters a stay, the Committee will be deprived of this important information to which it is entitled.  That deprivation alone would seriously harm the Committee:  where "granting a stay would deprive [the Committee] of the information it seeks," that "plainly constitutes harm for purposes of this analysis."  *Comm. on the Judiciary v. Miers*, 575 F. Supp. 2d 201, 208 (D.D.C. 2008); *see Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate").

The harm to the Committee that would result from staying disclosure pending appeal is particularly severe because denying the Committee "evidence relevant to an impeachment inquiry could pose constitutional problems."  *In re App.*, 2019 WL 5485221, at *34.  The Constitution vests the House with the "sole Power of Impeachment."  U.S. Const., Art. I, § 2, cl. 5; *see Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 732 (D.C. Cir. 1974) (explaining that Congress's "investigative authority … with respect to presidential conduct has an express constitutional source" (citing U.S. Const., Art. I, § 2)). Withholding the grand jury materials "would clearly violate separation of powers principles" by impairing the Committee's ability to carry out its Article I impeachment function.  *In re Request*, 833 F.2d at 1445; *see Clinton v. Jones*, 520 U.S. 681, 701 (1997) ("the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties" (quoting *Loving v. United States*, 517 U.S. 748, 757 (1996))); *Nixon v. Adm'r of Gen. Servs.*, 433

---

[6] Although DOJ again argues—based solely on a *Washington Post* article—that the Judiciary Committee's inquiry into these issues is "secondary" to HPSCI's Ukraine inquiry, DOJ Mot. at 6, that contention lacks merit for the reasons stated above.

U.S. 425, 443 (1977) (focusing on the extent to which a Branch is prevented "from accomplishing its constitutionally assigned functions" and whether such impairment is justified).

**2.** The public interest demands a swift but thorough impeachment investigation, which is critical to the House's ability to effectively and efficiently perform its impeachment function. Deciding whether to impeach the President is among Congress's most important and solemn constitutional obligations. As James Madison explained, "[t]he limitation of the period of [the President's] service[] was not a sufficient security" against incapacity or corruption, which could be "fatal to the Republic." 2 *The Records of the Constitutional Convention of 1787*, at 65-66 (Max Farrand ed., 1911). Or as DOJ's own Office of Legal Counsel has put it, by assigning the power to impeach to Congress, "the Framers themselves" acknowledged "the public interest in *immediately* removing a sitting President whose continuation in office poses a threat to the Nation's welfare." *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222, 2000 WL 33711291, at *27 (2000) (emphasis added).

Delay in this case would not only hinder the House's ability to consider impeachment quickly, but also enhance DOJ's ability to run out the clock on the Committee's impeachment inquiry altogether. That would further undermine the public interest. Because the House is not a continuing body, *see Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 512 (1975), the Committee's investigation and the articles of impeachment referred to the Committee will necessarily expire on January 3, 2021. The Committee requires sufficient time before that date to perform its constitutional duties. Every day that the Committee is without the redacted information undercuts the Committee's ability to determine whether to impeach the President. *Cf. Miers*, 575 F. Supp. 2d at 207 (suggesting the Judiciary Committee would have a claim to

irreparable harm where, absent relief, "the Committee would very likely be denied … testimony … , which it [had] deemed vital to its investigation, prior to the lapse of Congress").

Finally, as this Court recognized, "[i]mpeachment based on anything less than all relevant evidence would compromise the public's faith in the process." *In re App.*, 2019 WL 5485221, at *34. That principle applies with particular force here, where the Mueller Report detailed troubling instances of Presidential misconduct and abuse of power. Because the Special Counsel declined to make a criminal charging decision regarding the President, it is now up to Congress to determine whether to hold the President accountable. A fair process to determine whether the President has committed impeachable offenses, taking into account all relevant information, is undoubtedly in the public's interest. The Committee is investigating what actions the President might have taken to undermine the investigation into Russian interference, who was involved, and how to prevent such conduct in the future. The public has an interest in the House obtaining answers to these questions and those concerning the President's solicitation of Ukrainian interference in the 2020 Presidential election. As the D.C. Circuit has recognized, there is a "clear public interest in maximizing the effectiveness of the investigatory powers of Congress." *Exxon Corp.*, 589 F.2d at 594.

## CONCLUSION

The Committee respectfully requests that the Court deny DOJ's motion for a stay pending appeal.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
   *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
   *Associate General Counsel*
Adam A. Grogg (DC Bar No. 1552438)
   *Assistant General Counsel*
Jonathan B. Schwartz (DC Bar No. 342758)
   *Attorney*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

Annie L. Owens (DC Bar No. 976604)
Daniel B. Rice (DC Bar No. 888273343)
Joshua A. Geltzer (DC Bar No. 1018768)
Mary B. McCord (DC Bar No. 427563)
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, D.C. 20001
Telephone: (202) 662-9042
ao700@georgetown.edu

*Counsel for the Committee on the Judiciary, United States House of Representatives*

October 29, 2019