**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

*In re* APPLICATION OF THE COMMITTEE
ON THE JUDICIARY, U.S. HOUSE OF
REPRESENTATIVES, FOR AN ORDER
AUTHORIZING THE RELEASE OF
CERTAIN GRAND JURY MATERIALS

Grand Jury Action No. 19-48 (BAH)

Chief Judge Beryl A. Howell

---

**MEMORANDUM AND ORDER**

The Department of Justice ("DOJ") seeks to stay this Court's order, issued on October

25, 2019, requiring DOJ to disclose, by October 30, 2019, to the House Judiciary Committee

("HJC") the grand jury material redacted, pursuant to Federal Rule of Criminal Procedure 6(e),

from the public version of Special Counsel Robert S. Mueller III's *Report On The Investigation*

*Into Russian Interference In The 2016 Presidential Election* ("Mueller Report"), as well as any

underlying transcripts or exhibits referenced in those redactions.  DOJ's Mot. to Stay Disclosure

Order Pending Appeal ("Mot. Stay"), ECF No. 48.[1]  For the reasons set out below, the motion

for a stay is denied.

The law is well settled that a stay of a final judicial order pending appeal is an

"extraordinary remedy." *Cuomo v. NRC*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam).  The

Supreme Court has explained that "[a] stay is an 'intrusion into the ordinary processes of

administration and judicial review,'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va.*

*Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)), and, further,

---

[1]      DOJ filed the pending motion for a stay on October 28, 2019.  After entry of a minute order directing HJC
to respond, *see* Min. Order (Oct. 28, 2019), HJC filed its Opposition to DOJ's Motion for a Stay Pending Appeal,
ECF No. 50, on October 29, 2019, which was supplemented with HJC's response to an order to show cause from
this Court, HJC's Resp. to Order to Show Cause, ECF No. 52.

that such a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant," *id.* (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).  The party requesting a stay bears the burden of showing that the circumstances of a particular case justify an exercise of judicial discretion upon consideration of four "traditional," *id.* at 434, and "stringent requirements," *Van Hollen v. FEC*, Nos. 12-5117 & 12-5118, 2012 WL 1758569, at *1 (D.C. Cir. May 14, 2012) (per curiam): "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay," *Cuomo*, 772 F.2d at 974; *see also Nken*, 556 U.S. at 434 (listing essentially same four factors); *Hilton* v. *Braunskill*, 481 U.S. 770, 776 (1987) (same).

The Supreme Court has indicated that "[t]he first two factors of the traditional standard are the most critical," *Nken*, 556 U.S. at 434, and has elaborated, as to the first factor, that "[i]t is not enough that the chance of success on the merits be 'better than negligible,'" *id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)).  Rather, "[m]ore than a mere 'possibility' of relief is required." *Id.* (alteration in original) (internal quotation marks omitted).  The D.C. Circuit has further emphasized the importance of the first factor, stating that "show[ing] little prospect of success" on appeal is "an arguably fatal flaw for a stay application." *Citizens for Responsibility & Ethics in Washington v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam); *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("read[ing] *Winter* [*v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)] at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement'" (quoting *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J. concurring))).

As to the requisite irreparable injury showing, "simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (citation omitted) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).  Rather, "[a] party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). Indeed, "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Wis. Gas*, 758 F.2d at 674 (emphasis in original).

Set against these standards, analysis of the four requisite factors mandates denial of the stay.

DOJ is not likely to succeed on the merits on appeal.  The legal standard for likelihood of success to obtain a stay of an order is not "a 50% plus probability," *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977), but is rather a finding that "the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation," *id.*  Here, DOJ argues, first, that there is a "substantial question as to whether an impeachment trial constitutes a 'judicial proceeding' within the meaning of Rule 6(e)," Mot. Stay at 4, because "[i]mpeachment and removal proceedings in the legislature are not 'judicial proceedings' within the ordinary meaning of that language," *id.* at 2; and, second, that HJC failed to establish "particularized need" for the requested materials because (a) HJC failed to articulate a "*specific* reason the information is needed," *id.* at 5 (emphasis in original), and (b) "the amount of information [already] released in connection with the Mueller Report" minimizes HJC's need for the materials, *id.* at 6.[2]

---

[2]     Notably, DOJ has not argued that it is likely to prevail on any argument related to whether HJC's current investigation is occurring "preliminarily to" an impeachment trial.  FED. R. CRIM. P. 6(e)(3)(E)(i).

The serious infirmities in DOJ's arguments have already been addressed at length. *See In re Application of Committee on Judiciary, U.S. House of Representatives, for an Order Authorizing Release of Certain Grand Jury Materials*, No. 19-gj-48 (BAH), 2019 WL 5485221, at \*11–23 (D.D.C. Oct. 25, 2019) (judicial proceeding); *id.* at \*32–38 (particularized need). Regarding the first argument, DOJ continues to ignore that the D.C. Circuit has already given "judicial proceeding," as used in Rule 6(e), a "broad interpretation," *In re Sealed Motion*, 880 F.2d 1367, 1379 (D.C. Cir. 1989) (per curiam); that *Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (en banc), and *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), *reh'g denied*, Order, No. 17-5149 (D.C. Cir. July 22, 2019), *docketing petition for cert.*, No. 19-307 (U.S. Sept. 5, 2019), are binding D.C. Circuit precedent that rejected DOJ's position; and that historical practice, the Federalist Papers, the text of the Constitution, and Supreme Court precedent all make clear that impeachment trials are judicial in nature and constitute judicial proceedings.

Regarding the "particularized need" arguments that DOJ asserts present colorable appealable issues, DOJ is especially unlikely to succeed given that determinations of "particularized need" are committed to the "considered discretion of the district court." *Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 228 (1979). Moreover, courts have consistently recognized that the "interest in conducting a full and fair impeachment inquiry" is a sufficiently particularized need. *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1442 (11th Cir. 1987); *see also* Order, *In Re: Grand Jury Investigation of U.S. Dist. Judge G. Thomas Porteous, Jr.*, No. 2:09-mc-04346-CVSG, at 3 (E.D. La. Aug. 6, 2009), *summarily aff'd sub nom. In re Grand Jury Proceeding*, No. 09-30737 (5th Cir. Nov. 12, 2009); *In re Report & Recommendation of June 6, 1972 Grand Jury* (*In re 1972 Grand Jury Report*), 370 F. Supp. 1219, 1230 (D.D.C. 1974) (Sirica, C.J.). DOJ's minimal chance of success on appeal, by

itself, is likely "fatal" to its motion, *Citizens for Responsibility & Ethics in Washington*, 904 F.3d at 1019, but DOJ fares no better on the other factors.

As to the second critical factor, irreparable harm to the moving party, DOJ must, at a minimum, show an especially high degree of irreparable harm considering DOJ's failure to establish a likelihood of success on appeal.  *See Cuomo*, 772 F.2d at 784 ("Probability of success is inversely proportional to the degree of irreparable injury evidenced.  A stay must be granted with either a high probability of success and some injury, or vice versa.").  DOJ alleges irreparable harm without a stay because "once the grand jury information is released to the HJC . . . , information cannot ever be clawed back," and DOJ claims that this harm "is particularly acute here, where there is no guarantee the HJC will keep this sensitive information secret." Mot. Stay at 3.  This assertion is predicated on the apparent view that, despite the HJC's special protocols for handling grand jury material and keeping that information confidential, those protocols cannot be trusted.  To the contrary, given those protocols, a disclosure of grand jury material made under the October 25 Order that is found to be erroneous, can be clawed back. To the extent that underlying DOJ's concern is a lack of trust in those protocols, history shows that HJC has been and can be trusted.  *See In re 1972 Grand Jury Report*, 370 F. Supp. at 1230 ("[HJC] has taken elaborate precautions to insure against unnecessary and inappropriate disclosure of these [grand jury] materials. . . . We have no basis on which to assume that [HJC]'s use of the Report will be injudicious . . . .").  Indeed, Congress has *still* not publicly disclosed the entirety of the Watergate grand jury report that Chief Judge Sirica ordered be given to HJC forty-five years ago, in 1974.  *See In re Petition for Order Directing Release of the "Road Map" Transmitted by the Watergate Grand Jury to the House Judiciary Committee in 1974*, No. 1:18-mc-00125-BAH (D.D.C. dismissed without prejudice Apr. 16, 2019).  This only demonstrates

that disclosure to HJC does not equate to public disclosure.  Finally, the mere chance that HJC

may opt to make some of the grand information public at some point is not sufficient to establish

a "certain" injury.  *Cuomo*, 772 F.2d at 976 (quoting *Wis. Gas*, 758 F.2d at 674).

Nor will allowing HJC itself to review the grand jury materials cause irreparable harm.

HJC did not "request[] the entire grand jury record" of the Special Counsel's investigation,

HJC's Reply in Support of its App. for an Order Authorizing the Release of Certain Grand Jury

Materials at 24, ECF No. 33, and this Court—accepting HJC's proposal that the case proceed

with "focused and staged disclosure," *id.* at 25—ordered the release to HJC of only two, limited

categories of information: the "'portions of the Mueller Report that were redacted pursuant to

Rule 6(e),'" and "the material underlying those redactions—that is, the portions of the grand jury

'transcripts or exhibits' cited in the Report," *In re Application of the Committee on the Judiciary*,

2019 WL 5485221, at *32 (quoting HJC's App. for an Order Authorizing the Release of Certain

Grand Jury Materials at 25, ECF No. 1).  HJC's access to this limited material on a confidential

basis in the circumstances of this matter will not harm the interests that grand jury secrecy is

meant to protect, *see id.* at *37–38, and this concern would certainly be insufficient to justify a

stay here, given that DOJ has not established a likelihood of success on appeal.[3]

The third factor, whether HJC will be harmed if the requested stay is ordered, and the

final factor, the public interest, also weigh against granting DOJ's motion.  "[A]n impeachment

---

[3]       This conclusion is not altered by the fact that Chief Judge Sirica, in ordering disclosure of the Watergate
grand jury's report on President Richard Nixon's conduct, stayed his decision "because of the irreversible nature of
disclosure." *In re 1972 Grand Jury Report*, 370 F. Supp. at 1231.  Chief Judge Sirica's decision pre-dates D.C.
Circuit caselaw that has explained the substantial—perhaps dispositive—weight that must be given to the first
factor, likelihood of success on appeal. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington*, 904 F.3d at
1019; *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 422 n.6 (1983) (recognizing, nine years after
disclosure of the Watergate grand jury's report, that disclosure of grand jury material does not moot an appeal).
Moreover, Chief Judge Sirica ordered a stay of just two days, and did so merely "to allow [the] defendants an
opportunity to pursue their remedies." *In re 1972 Grand Jury Report*, 370 F. Supp. at 1231.  This Court went
beyond what Chief Judge Sirica did and granted DOJ *five days* to pursue an appeal before having to disclose any
grand jury materials.

investigation involving the President of the United States" is "a matter of the most critical

moment to the Nation."  *In re 1972 Grand Jury Report*, 370 F. Supp. at 1230.  As DOJ has

acknowledged, "the Framers themselves specifically determined" by providing for an

impeachment process that there is a "public interest in immediately removing a sitting President

whose continuation in office poses a threat to the Nation's welfare."  *A Sitting President's

Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222, 258 (2000).  Both HJC

itself and the public, therefore, have an interest in HJC gaining immediate access to this grand

jury material.[4]

The Court finds that all four factors—including both critical factors—favor allowing

disclosure to occur while this case is considered on appeal.  Accordingly, it is hereby

**ORDERED** that DOJ's Mot. Stay, ECF No. 48, is **DENIED**.

**SO ORDERED**.

Date: October 29, 2019

_____
BERYL A. HOWELL
Chief Judge

---

[4]      DOJ claims that HJC does not need the disclosure to occur imminently because "[t]he Speaker [of the House] has announced that the House impeachment inquiry will focus narrowly on the whistleblower complaint and issues surrounding Ukraine" and thus "now . . . the House Intelligence Committee . . . is the lead committee heading the congressional investigation."  Mot. Stay at 6.  The Speaker has, however, in fact "direct[ed]" the "*six* Committees" who have been "investigating" the President's conduct—which *includes* HJC—to "proceed with their investigations under th[e] umbrella of impeachment inquiry."  *Pelosi Remarks Announcing Impeachment Inquiry* (Sept. 24, 2019), https://perma.cc/6EQM-34PT (emphasis added).  Thus, HJC plainly remains engaged.